UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, | ) ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:06CV01986 ) ) |
| AMERICAN POSTAL WORKERS UNION, AFL-CIO | ) Judge James Robertson ) ) |
| and | ) ) |
| UNITED STATES POSTAL SERVICE, | ) ) ) |
| Defendants | ) ) |

## MOTION OF THE AMERICAN POSTAL WORKERS UNION, AFL-CIO, FOR SUMMARY JUDGMENT

The American Postal Workers Union, AFL-CIO, asks the Court to grant summary judgment against the National Postal Mail Handlers Union, a Division of the Laborers' International Union of North America, and to dismiss the complaint with prejudice. A statement of undisputed material facts not in dispute, memorandum in support and proposed order, accompany this motion.

Respectfully submitted,

/s/ Anton G. Hajjar

Anton G. Hajjar (D.C. Bar No. 359267)
O'DONNELL, SCHWARTZ & ANDERSON, P.C.
1300 L Street, NW, Suite 200
Washington, D.C. 20005-4178
Telephone (202) 898-1707
Facsimile (202) 682-9276
ahajjar@odsalaw.com

Dated: November 7, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL POSTAL MAIL HANDLERS )
UNION, A DIVISION OF LABORERS' )
INTERNATIONAL UNION OF NORTH )
AMERICA, )
                              )
            Plaintiff, )
                              )
          v. )       Civil Action No. 1:06VB01986
                              )
                              )
AMERICAN POSTAL WORKERS )      Judge James Robertson
UNION, AFL-CIO )
                              )
           and )
                              )
UNITED STATES POSTAL SERVICE, )
                              )
            Defendants )
                              )

## MEMORANDUM OF AMERICAN POSTAL WORKERS UNION, AFL-CIO, IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The American Postal Workers Union, AFL-CIO ("the APWU"), asks the Court to grant it

summary judgment against the National Postal Mail Handlers Union, a Division of the Laborers'

International Union, AFL-CIO ("the NPMHU").  A dispute over whether employees of the

United States Postal Service ("the Postal Service") represented by the APWU or the NPMHU

should perform certain work was heard before arbitrator Donald A. Anderson ("Anderson"), who

issued an award ("the Award").  All parties agree that the three parties' mutual agreement

governing work jurisdiction disputes - the memorandum dated April 16, 1992, entitled

"Memorandum of Understanding" pertaining to "Regional Instruction 399[1] - Dispute Resolution

---

[1]      The parties generally refer to Regional Instruction 399 as "RI-399."

Procedures" ("the MOU ") - specifies the procedures for resolving jurisdictional disputes among the parties, and defines arbitrator Anderson's authority. Rec. 0196-0203.[2] The MOU states that "all parties shall be bound by the arbitrator's award whether or not they participate in the arbitration proceedings. The arbitrator's award shall be final and binding." Rec. 0197.

The Award states ( Rec. 0009): "The Employer  violated RI-399 when it chose to assign a Mail Handler to perform scanning work on foreign mail at the OISC [Oakland International Service Center] as it did in this case.  Such scanning is the primary work of clerk General Expeditor(s) [sic]."[3]

The NPMHU, alleging that Arbitrator Anderson exceeded his authority, now asks this Court to disregard the arbitrator's findings of fact, to make its own findings of fact, and to substitute the Court's judgment for the judgment of the arbitrator.  As we show below, it is the judgment of Arbitrator Anderson that the parties agreed to accept in their MOU, not of this Court.  There is no legal basis for disturbing Arbitrator Anderson's findings of fact and his conclusion that the Postal Service violated RI-399 when it assigned the work of scanning foreign mail at the loading dock at OISC to the clerks.

STATEMENT OF THE CASE

On November 20, 2006, the NPMHU filed a complaint alleging that the Award breached the MOU (Complaint ¶ 9):

In his award, Arbitrator Anderson rendered a decision on the merits of a

---

[2]     The parties stipulated to the record in this case.  Pages cited will be cited as  "Rec. ___."

[3]     For the purposes of this brief, the employees in the APWU's bargaining unit are called clerks, and the employees in the NPMHU's bargaining unit are called mail handlers.

jurisdictional dispute asserted by the APWU over the assignment of certain scanning work at a Postal Service facility located in Oakland, California. Arbitrator Anderson did so based on his stated conclusion that the parties to the arbitration proceeding had agreed to submit the jurisdictional dispute in question to him for a decision on the merits. That sated conclusion was incorrect; the NPMHU and the Postal Service never agreed to submit the jurisdictional dispute in question to Arbitrator Anderson for a decision on the merits. To the contrary, the NPMHU and the Postal Service both argued to Arbitrator Anderson that the jurisdictional dispute in question was not among the kinds of jurisdictional disputes that are subject to arbitration under the parties' tripartite agreement, and the only issue that they agreed to submit to Arbitrator Anderson for decision was that threshold issue of arbitrability (a threshold issue that Arbitrator Anderson failed to reach given his erroneous conclusion that the NPMHU and the Postal Service has agreed to submit the merits issue to him for decision).

According to the NPMHU (Complaint ¶ 10), the award should be vacated.  Oddly, the Postal Service admitted the allegation in its answer, but in its prayer for relief, asks the Court to dismiss the complaint.  We assume that by this the Postal Service is saying that there is no case or controversy between it and the NPMHU.  It is the APWU's understanding that the Postal Service supports the NPMHU in this litigation and, like the NPMHU, wants the Award to be vacated.

<u>MATERIAL FACTS</u>

1.  The NPMHU is an unincorporated labor organization with its offices at 1101 Connecticut Avenue, N.W., Suite 500, Washington, D.C. 20036.  The NPMHU is party to a collective bargaining agreement with the Postal Service and represents, for purposes of collective bargaining, approximately 57,000 employees of the Postal Service in the mail handler craft nationwide.  Complaint ¶ 4.

2.  The APWU is an unincorporated labor organization with its offices at 1300 L Street, N.W., Washington, D.C. 20005.  The APWU is party to a collective bargaining agreement with the Postal Service and represents, for the purposes of collective bargaining, approximately

280,000 employees of the Postal Service, including approximately 214,000 in the classification comprising postal clerks nationwide.  Complaint ¶ 5.

3.  The Postal Service is an independent establishment of the executive branch of the United States Government, as provided by 39 U.S.C. § 201.  The Postal Service's headquarters are located at 475 L'Enfant Plaza, S.W., Washington, D.C. 20260. Complaint ¶ 6.

4.  The parties have entered into a tripartite agreement entitled "Memorandum of Understanding" concerning "Regional Instruction 399 – Dispute Resolution Procedures" ("MOU"), dated April 16, 1992, which, among other things, establishes procedures (including arbitration) to resolve jurisdictional disputes among the parties. Rec. 0196-0204.

5.  On June 27, 2006, an arbitration hearing in Case # F98C-IFJ-01185458 (Loading Dock Scanning)[4] was held before Arbitrator Donald A. Anderson — one of several regional arbitrators who had been appointed by the parties pursuant to their tripartite agreement.  At the hearing, the NPMHU and Postal Service contended that the dispute was not arbitrable.  The parties agreed to present evidence on the merits of the dispute and have the arbitrator make a ruling in his award on the threshold arbitrability issue.  On August 23, 2006, Arbitrator Anderson issued his award in that case ( Rec. 0001-0009).  The Award found that the dispute was arbitrable and that the Postal Service violated RI-399 (see Rec. 0141-0166) "when it chose to assign a Mail Handler to perform scanning work on foreign mail at the loading dock at the OISC as it did in this case.  Such scanning is the primary work of clerk General Expediter(s)."  Rec. 0009.

6.  NPMHU advocate Don McAlister filed a closing statement for the NPMHU with Arbitrator Anderson in which he argued, among other things, that the dispute was not arbitrable

---

[4]        The case was combined with F98C-1F-C 0116215.  See Rec. 0028.

4

because the APWU filed the dispute in 2001, making it untimely under the MOU, because there was no claim of "new work, new or consolidated facilities, or an operational change" (emphasis omitted). The same closing statement presented arguments on the merits in support of the NPMHU's contention that the work in question was properly assigned to mail handler craft. It did so in a section of the closing statement entitled "On the Merits." According to the statement: "The APWU simply did not present any evidence or testimony at the hearing that would establish this work is improperly assigned to the Mail Handler Craft," supported by three pages of argument on the merits. Rec. 00356-00361.

7. APWU advocate Steven J. Zamanakos filed a post-hearing brief with Arbitrator Anderson. He wrote (Rec. 0013):

> This was a tripartite hearing among three parties; APWU, NPMHU & USPS. All parties had an opportunity to present their respective positions and present testimony and evidence to support their positions. At the conclusion of the hearing, the parties requested to brief both arbitrability and the merits of the case. There was no objection to this request ....

He also argued, among other things, that the dispute was arbitrable, citing postal arbitration awards applying the presumption of arbitrability and against forfeitures. He explained that the dispute originated as a cross-craft grievance filed under the grievance procedure under the APWU-Postal Service collective bargaining agreement, from which it was removed and by agreement referred to the MOU process to make a determination of craft jurisdiction. Zamanakos argued that the parties had agreed to process the dispute in the procedure under the MOU. He contended that the absence of scanning on the facility inventory confirmed the fact that a jurisdictional dispute existed. On the merits, Zamanakos relied, among other things, on the fact that the work in question was among the duties of the General Expediter as set forth in the

5

position description and that management had agreed with the APWU and informed the parties that "[s]canning is the principle [*sic*] responsibility of the General Expediter." Rec. 0012-0019.

8. Postal Service advocate Drusilla D. Wylie filed a closing brief with Arbitrator Anderson. The Postal Service said the "procedural issue" was whether the grievance was properly before a jurisdictional arbitrator and, under the heading "ISSUE": Did the Service violate the National Agreement, including RI-399, when the APWU contends a Mail Handler performed scanning duties on the Loading Dock?" (Rec. 0020).   The Postal Service argued, among other things, that the dispute was not arbitrable because it involved existing work (that is, work in existence at the time of the MOU) and did not involve a new or consolidated facility, new work, or an operational change. Rec. 0020-0025. The Postal Service also asserted that the "J" on the docket number "does not signify that the other two parties agree that the issue is truly a jurisdictional dispute – the 'J' merely is utilized for tracking purposes as already agreed to by the RDRC [Regional Dispute Resolution Committee] members to identify a case in the system that the initiating Union asserts is jurisdictional" (Rec. 0022).   In addition, the Postal Service pointed out that the scheduling letter contains a codicil reciting that it "does not constitute a waiver by either party of any issues of arbitrability or timeliness as it relates in the processing of the grievances, as it merely serves to confirm to the arbitrator the location, date and time" of the hearing (Rec. 0026). The Postal Service argued, among other things, that the absence of scanning on the facility inventory confirmed that the work in question was not specifically assigned to the General Expediter, and although mail handlers had done the work as far back as 1991, the APWU had not initiated a dispute as required under the MOU. Rec. 0020-0025.

9. In the APWU's Position Paper for the RDRC, which was an exhibit before Arbitrator

Anderson, Zamanakos argued, among other things, that the facility inventory did not render the dispute moot and that management had assigned scanning on the Loading Dock and Customs Dock to the General ExpediteRec. He also contended that the standard position description incorporates scanning as one of the duties of the General ExpediteRec. Rec. 0028-0029.

10. In the NPMHU's Position Paper for the RDRC, which was an exhibit before Arbitrator Anderson, its representative, Ephraim Daniel, argued that mail handlers were already working in the dispatch unit and that it would not be "efficient or effective" to assign a clerk Expediter to perform the scanning work; and that mail handlers had performed the duties in dispute "prior to the move from the Oakland P&DC." Rec. 0030.

11. In the Postal Service's position statement for the RDRC (Rec. 0031-0035), Wylie argued, among other things, that the dispatch unit was staffed by both clerks and mail handlers and the disputed work had been "done by both crafts without record of a dispute" (Rec. 0031). She contended that the Postal Service had proposed to amend the existing inventory to state in part: "Scanning is the principle [*sic*] responsibility of the General Expediter," but that the NPMHU objected. The Postal Service asserted that, because no dispute existed at the time of the MOU, and the APWU did not claim that there was a new or consolidated facility, new work or an operational change, the MOU prohibited the APWU from initiating a dispute over the scanning work thereafteRec. The Postal Service also asserted that scanning was merely incidental to the mail handlers' truck loading duties, and that the assignment was proper under "efficiency and economy" principles. Rec. 0034.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact

and the moving party has demonstrated that it is entitled to a judgment as a matter of law.  Fed. Rec. Civ. P. 56(c).  Only disputes over facts which affect the outcome of the case will properly preclude the entry of summary judgment.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242 (1986).  As to the "genuineness" of the dispute, summary judgment must be granted unless there is sufficient evidence for a jury to return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  "If the evidence is merely colorable or it is not significantly probative, summary judgment is proper."  <u>Id.</u> at 249-50.  A party may not rely upon speculation or conjecture to defeat the motion. Rather, to satisfy the requirements of <u>Anderson</u>, the non-moving party must come forward with sufficient evidence to allow a jury to find in its favor on each and every essential element on which it bears the burden of proof at trial.  If it is unable to show that there is a "genuine" dispute over "material" facts, then the motion for summary judgment must be granted.

## <u>STANDARD FOR JUDICIAL REVIEW OF ARBITRATION AWARDS</u>

The standard for enforcing arbitration awards is a highly deferential one developed by the United States Supreme Court  to preserve and protect the dispute resolution value of labor arbitration.  Accordingly, federal courts have a duty to enforce arbitration awards in all but extraordinary circumstances.

The Supreme Court has repeatedly emphasized that the standard for judicial review of labor arbitration awards is extremely narrow, in fact, it is "among the narrowest known to the law."  <u>Union Pac. R.R. v. Sheehan</u>, 439 U.S. 89, 91 (1978); <u>Major League Baseball Players Association v. Garvey</u>, 532 U.S. 504, 509-10 (2001) (per curiam) (courts have a "limited role in

reviewing the merits of arbitration awards");.[5] see American Postal Workers Union v. United

States Postal Service, 52 F.3d 359, 361 (D.C. Cir. 1995) (the scope of review of labor arbitration

awards is "extremely narrow"); Utility Workers Union of Am., Local 246 v. NLRB, 39 F.3d

1210, 1216 (D.C. Cir. 1994) (review of labor arbitration awards call for "the greatest deference

imaginable"); Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17, 531

U.S. 57, 62 (2000) (arbitration awards may be set aside only "in rare instances").  The Supreme

Court has repeatedly held that the judiciary's role in reviewing arbitrations arising from

collectively bargained agreements[6] between labor unions and employers is one of almost

complete deference to the arbitration process.  United Steelworkers v. American Mfg. Co., 363

U.S. 564 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960);

United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); Hines v. Anchor

Motor Freight, Inc., 424 U.S. 554 (1976).  In 1987, in United Paperworkers International Union,

AFL-CIO v. Misco, Inc., the Supreme Court observed that it had

> made clear almost 30 years ago that the courts play only a limited role when
> asked to review the decision of an arbitrator.  The courts are not authorized
> to reconsider the merits of an award even though the parties may allege that
> the award rests on errors of fact or on misinterpretation of the contract....

---

[5]    Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b) authorizes
the district courts to enforce or vacate arbitration awards entered pursuant to a collective
bargaining agreement.  American Postal Workers Union v. United States Postal Service, 827 F
.Supp 836, 838 (D.D.C. 1993) (citing W.R. Grace & Co. v. Local 759, International Union of
United Rubber, 461 U.S. 757, 764 (1983).  Section 1208(b) is the postal analogue of Section
301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a), the statute under
which non-postal labor arbitration awards are enforced.  Courts regularly rely on precedent under
Section 301(a) in deciding cases under Section 1208(b).  National Ass'n. of Letter Carriers v.
United States Postal Service, 590 F.2d 1171, 1174-75 (D.C. Cir. 1978).

[6]    The collective bargaining agreement in question in this case is the MOU in
accordance with which Arbitrator Anderson was appointed.

9

> *Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept...*To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them...Furthermore, it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the plant are established.

484 U.S. 29, 36-38 (1987) (emphasis added). The Court of Appeals for the District of Columbia Circuit has affirmed this principle in cautioning that delay created by judicial review of labor arbitration awards should be vigorously avoided and that "[t]he case must present egregious deviations from the norm before we will abandon the firmly-established principle of deference." OPEIU v. Washington Metro. Area Transit Auth., 724 F.2d 133, 137 (D.C. CiRec. 1983); see American Postal Workers Union v. United States Postal Service., 789 F.2d 1, 3 (D.C. CiRec. 1986) (an arbitrator's reading of the contract is entitled to enforcement unless the award itself violates established law or seeks to compel some unlawful action). Moreover, "a principal characteristic of the common law of arbitration is judicial deference to arbitral decisions." Devine v. White, 697 F.2d 421, 435 (D.C. CiRec. 1983).

In a fairly recent decision, the Supreme Court focused particularly on the role of courts in reviewing factual findings by arbitrators. Garvey, 532 U.S. at 509-10. The Court reversed a Court of Appeals decision in which the Court of Appeals had substituted its own findings of fact for those of the arbitratoRec. The Supreme Court, citing Misco, held:

> Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement...When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the Arbitrator's *"improvident, even silly, factfinding"* does not provide a basis for a reviewing

court to refuse to enforce the award.

Id. at 509 (emphasis added).  See Sargent v. Paine Webber, Jackson & Curtis, Inc., 674 F. Supp.

920, 922 (D.D.C. 1987) ("court is precluded from overturning errors in factual determinations").

Likewise, "[t]he question of interpretation of the collective bargaining agreement is a

question for the arbitrator" and should be treated with "nearly unlimited deference." Cole v.

Burns Int'l Sec. Serv., 105 F.3d 1465, 1468, 1474 (D.C. CiRec. 1997).  The "scope of the

arbitrator's authority is itself a question of contract interpretation that the parties have delegated

to the arbitrator".  W.Rec. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork,

Linoleum & Plastic Workers of Am., 461 U.S. 757, 765 (1983); see Madison Hotel v. Hotel and

Restaurant Employees, Local 23, AFL-CIO, 144 F.3d 855, 857 (D.C. CiRec. 1998).[7]  In other

words, because the applicable labor contract determines the scope of the arbitrator's authority,

the arbitrator's interpretation of the scope of his own authority is simply another interpretation of

the labor contract.  Accordingly, the arbitrator's conclusion regarding the scope of his authority is

reviewed under "the same judicial deference as an arbitrator's interpretation of a collective

bargaining agreement." Madison Hotel, 144 F.3d at 857.  Similarly, an "arbitrator's view of the

issues submitted to him for arbitration [also]...receives the same judicial deference as an

arbitrator's interpretation of a collective bargaining agreement.  Id.

Courts must approach arbitration awards with the same deferential standard "even when

---

[7]     The general principle that issues of arbitrability are to be decided by courts rather
than arbitrators does not apply to the instant case because the parties entered into a contract
agreeing that issues of arbitrability would be decided by arbitrators, not by the courts.  See AT&T
Technologies Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986); see also
Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 442 F.2d 1234, 1236
(D.C. CiRec. 1971); W.Rec. Grace and Co., 461 U.S. at 765.

the basis for the arbitrator's decision may be ambiguous." W.Rec. Grace & Co., 461 U.S. at 764;

American Postal Workers Union, 789 F.2d at 5 (noting that "even in the face of an ambiguous

arbitration award, a judge has no authority to second-guess arbitral judgments"). The Supreme

Court has made clear that "[a] mere ambiguity in the opinion accompanying a award, which

permits an inference that the arbitrator may have exceeded his authority, is not a reason for

refusing to enforce an award." Enterprise, 363 U.S. at 598. Moreover, "[a]rbitrators have no

obligation to the court to give their reasons for an award. To require opinions free of ambiguity

may lead arbitrators to play it safe by writing no supporting opinions." Id.

In Sargent, 882 F.2d at 532-33, the Court of Appeals for the District of Columbia Circuit

overturned a remand to the arbitrators and ordered confirmation of an arbitration award the basis

of which was unclear from the opinion accompanying the award. The court noted that "arbitral

awards may be made without explanation" and it is the district court's duty to confirm an award

when the arbitration record discloses a "permissible route" to the arbitrator's award. See Chicago

Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1506 (7th CiRec.1991)

(an award must be upheld where there is a "possible interpretive route" to the award); see also

W.Rec. Grace & Co., 461 U.S. at 764 (ambiguous decisions not a basis for failing to enforce

awards).

Finally, the Supreme Court has held that "procedural questions which grow out of the

dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator,

to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (quoting John Wiley

& Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)) (internal quotations omitted). Procedural

arbitrability issues include "'allegation[s] of waiver, delay, or a like defense to arbitrability.'" Id.

(quoting <u>Moses H. Cone Mem. Hosp. v. Mercury ConstRec. Corp.</u>, 460 U.S. 1, 25 (1983)). In

<u>Howsam</u>, the Supreme Court explained that <u>Wiley</u> stands for the proposition that arbitrators

should decide whether the procedural prerequisites for arbitration had been met. 537 U.S. at

85–86. The Court concluded that Dean Witter Reynolds's claim that its client failed to comply

with the relevant six-year time limit for submitting claims for arbitration was for the arbitrator to

decide.

<u>ARGUMENT</u>

    The NPMHU is well aware of the standard for vacating an arbitration award based on the

"[a]rbitrator...exceed[ing] his authority." (Complaint ¶ 10.) In a recent decision of this Court,

the NPMHU "made the law" on the application of the general principles of arbitration as they

apply to the parties under the MOU. In that case Magistrate Judge Alan Kay adopted the

NPMHU's arguments when the APWU had sued the NPMHU to vacate an arbitration award

under circumstances closely analogous to those present in this case. <u>American Postal Workers</u>

<u>Union v. National Postal Mail Handlers Union</u>, No. 1:05-CV-01290, 2007 WL 581921 (D.D.C.

Feb. 21, 2007) (annexed as Attachment A). Judge Kay recited the standards set forth above in

dismissing the APWU's action, supported by the Postal Service, seeking to vacate an award as

being beyond the arbitrator's authority.

    There, the APWU argued that the arbitration award involving a work jurisdiction dispute

between the NPMHU and APWU should be vacated because the arbitrator exceeded his

authority, which was limited to resolving disputes under the tripartite MOU (the same labor

agreement underlying the instant case). The dispute there originated as a "crossing craft"

grievance under the NPMHU-Postal Service grievance procedure, which is proper only when

13

there is no question about which union has jurisdiction over the work in question.[8] The Postal

Service exercised its right under the MOU to remove the matter from that procedure and refer it

to the tripartite MOU as a jurisdictional dispute because it believed that the jurisdiction over that

work was unsettled. The APWU and the Postal Service argued in court that the arbitrator went

beyond his authority by relying on a bilateral agreement between the NPMHU and the Postal

Service. Although ruling in his award that the dispute not arbitrable under the tripartite MOU,

the arbitrator directed that the dispute be heard in the bilateral NPMHU-Postal Service Article 15

grievance procedure (to which the APWU was not a party) . Id. at *7. Judge Kay found that the

arbitration award was "entitled to deference because there was a "possible interpretive route" to

the arbitrator's award. Id. at *9 (quoting Chicago Typographical Union, 935 F.2d at 1506). Even

though the arbitrator in that case never made a finding on jurisdiction or that the dispute was in

reality a crossing craft dispute (id.), Judge Kay found that he could uphold the award because

"[t]he arbitrator's assertion of authority [was] consistent with the NPMHU's position during the

hearing that the Arbitrator could refer the dispute back to the Article 15 grievance process under

the NPMHU-USPS collective bargaining agreement." Id. at *8.

In this case, the NPMHU argues that the Award should be vacated because Arbitrator

Anderson "exceeded his authority under the parties' tripartite agreement [the MOU]," in

opposition to the same arguments that it had argued and upon which it prevailed in the other

case. (Complaint ¶ 10.); APWU v. NPMHU, 2007 WL 581921, at *3. The NPMHU argues here

what the APWU unsuccessfully argued in the other case: that the Award should be vacated

---

[8]    A crossing-craft grievance is one in which there is no dispute over the craft having
jurisdiction over the work in question and the union is seeking only to enforce what it contends is
an assignment in violation of its established craft jurisdiction. See APWU v. NPMHU at *2 n. 4.

14

because the arbitrator exceeded his authority under the MOU.  As the NPMHU should know, this claim is without legal or factual basis.  The NPMHU stressed to Judge Kay that the dispute had originated in the NPMHU-Postal Service grievance procedure as a crossing-craft grievance but was removed from that procedure by the Postal Service for a jurisdictional determination – one which may be made only by an arbitrator appointed under the trilateral MOU.  After doing so, the Postal Service successfully argued non-arbitrability because of timeliness, preventing a jurisdictional determination. Judge Kay found an "interpretive route" to upholding the award by finding that, although the award was unclear on this point, the arbitrator implicitly accepted the NPMHU's argument that he had the authority to rescue the crossing-craft grievance from oblivion by referring it back to the NPMHU-Postal Service grievance procedure.  APWU v. NPMHU at *8.

Similarly  in this case, Zamanakos argued to arbitrator Anderson that the removal of the crossing-craft grievance from the bilateral grievance procedure and its referral to the trilateral procedure under the MOU and its subsequent consideration by the dispute resolution committees constituted an agreement by the parties to have an RI-399 arbitrator decide the merits of the dispute – that is, make a jurisdictional determination. Without such a jurisdictional determination, the APWU's crossing-craft grievances could likewise be consigned to oblivion. Zamanakos point is very well taken: arbitrators Anderson's failure to make a determination on the merits could have left the crossing-craft grievance in perpetual limbo because (as noted above), underlying a crossing-craft grievance is the question of which craft has jurisdiction over the work in question and a regular panel arbitrator has no authority to make such a finding.

Applied in this case, these principles require the Court to refrain from vacating the Award

15

because it is undisputed that the parties submitted the issue of arbitrability to the arbitrator. The arbitrator made a **factual** finding that the parties had **agreed** to submit the **merits** of the dispute to him for decision. This express finding – whether the Court believes it was right or wrong – requires the Court to uphold the award.

In its complaint, the NPMHU alleges that the parties did not submit the merits to the arbitrator but only the threshold issue of arbitrability. The contention cannot be sustained in light of Arbitrator Anderson's discussion and the underlying record. The issue statement in the Award is: "Did the Employer violate RI-399 when it assigned the work of scanning foreign mail into the MIDAS system on the loading dock at the Oakland International Service Center?" Rec. 0001. According to the arbitrator (Rec. 0002-0003):

> At the hearing the Employer and the NPMHU asserted that the issue was improperly in arbitration because none of the three, (3) basic procedural filing requirements as outlined above[9] were present. Nonetheless, with the agreement of each of the parties, the Arbitrator proceeded to hear evidence on each of the issues and would address the EMPLOYER/NPMHU motion for dismissal during his award deliberations.

Although perhaps not elegantly phrased, it is clear that the arbitrator ruled that the parties submitted both the arbitrability issue and the merits for decision. Obviously, if he ruled that the dispute was not arbitrable, he would not reach the merits, but as we show below, his finding that the dispute was arbitrable is unassailable. The case law makes clear that even an ambiguity in the discussion preceding an award would not be grounds to overturn it when there is an interpretive route to upholding the award.

There is ample evidence in the record that the parties submitted both issues for decision,

---

[9]    That is, new or consolidated facility, new work, or operational change. Rec. . 0003.

16

and not only arbitrability, as the NPMHU contends.  APWU advocate Zamanakos wrote in his

brief ( Rec. 0013):

> This was a tripartite hearing among three parties; APWU, NPMHU & USPS.  All parties
> had an opportunity to present their respective positions and present testimony and
> evidence to support their positions.  At the conclusion of the hearing, the parties
> requested to brief both arbitrability and the merits of the case.  There was no objection to
> this request ...."

In fact, the NPMHU itself argued the merits in its closing statement.  See Rec. 358 (headed "On

the Merits").  The NPMHU cannot demonstrate that the allegation in paragraph 9 of its complaint

is in fact true.

No party questions that the parties submitted evidence bearing on the merits as well as the

arbitrability issue.  The narrow argument made by the NPMHU is that the parties authorized

arbitrator Anderson only to decide arbitrability.  Given the fact that the NPMHU's brief to the

arbitrator addressed the merits at some length, the notion that the arbitrator was required to wait

and issue a second award on the merits makes no sense.

Furthermore, the contention that the parties did not submit the merits to the arbitrator  is

one of the "procedural questions which grow out of the dispute and bear on its final disposition"

which are "presumptively *not* for the judge, but for an arbitrator, to decide." Howsam, 537 U.S.

at  84 (quoting John Wiley & Sons, 376 U.S. at 557).

Moreover, the "interpretive route" for the Court to uphold the Award is the same route

taken by Judge Kay, namely, that he agreed with the APWU's statement of the issue (which

addressed the merits) and its contention that the parties had agreed to the procedure he employed

– a decision on the arbitrability question and, if the dispute were found to be arbitrable, he was to

proceed to a decision on the merits.

17

It is anticipated that the NPMHU and Postal Service may argue that the arbitrator impermissibly relied on the letter scheduling the hearing (which contained an express reservation of the parties' right to contest arbitrability) in concluding that the dispute was arbitrable. Our first response is that this claim is not made in the complaint itself. Paragraph 9 of the complaint is quite explicit in alleging that the defect in the award was that the arbitrator was not empowered to decide anything other than arbitrability.

In any event, the argument has no merit because there is no indication that the arbitrator relied **solely** on the scheduling letter. Indeed, the Arbitrator acknowledged that the fact that "the grievance identifying number is proceeded by the letter 'J'" was there "for tracking reasons only" ( Rec. 0003) and relied instead on the agreement of the parties at the RDRC to have the case be decided on the merits. The arbitrator ruled in favor of arbitrability based on fact of agreement, not solely on the scheduling letter. Or to put it another way, an "interpretive route" to upholding this Award is by concluding – as Judge Kay did in the prior lawsuit filed by the NPMHU – that, although (to quote Judge Kay "not a model of clarity" (2007 WL 581921 at * 8), the Arbitrator accepted the APWU's argument that the parties had actually agreed to submit the merits of the dispute to him to decide. To quote from part of Zamanakos' brief, the dispute originated as an APWU grievance alleging a violation of the APWU-Postal Service collective bargaining agreement by crossing crafts in assigning scanning work to a mail handler, from which it was removed in accordance with the MOU and "he cases then went to the RDRC and all three parties agreed to process the cases in RI 399."

A further indication that the Arbitrator did not rely solely on the scheduling letter is found in his discussion of the NPMHU's and Postal Service's argument, relying on the MOU, that this

18

dispute was a prohibited new dispute because mail handlers were performing the disputed work in 1991 and there was no APWU dispute on file in 1992, and no claim of new work, new or consolidated facilities, or new work.  The Arbitrator dismissed the argument that the dispute was untimely (the basis for the NPMHU's and Postal Service's arguments against arbitrability), holding that there was a continuing violation.  Rec. 0004.  As noted, procedural arbitrability issues include "'allegation[s] of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. at  25).

Ultimately, it does not matter if the interpretive routes suggested here are implausible, so long as they are possible.  Misco, 484 U.S. at 36-38.  As the Garvey Court reminds us (532 U.S. at 509),  "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the Arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award."  Even if the Court is convinced that Arbitrator Anderson's findings of fact or interpretation of the agreements is incorrect, that is not grounds for vacating the Award.  Because the Award draws its essence from the language of the applicable labor agreement, it cannot be vacated.

CONCLUSION

For the above reasons and those appearing in the record as a whole, the complaint should

be dismissed and the Court should enter summary judgment in favor of the APWU.

Respectfully submitted,

/s/ Anton G. Hajjar

Anton G. Hajjar (D.C. Bar No. 359267)
O'DONNELL, SCHWARTZ & ANDERSON, P.C.
1300 L Street, NW, Suite 200
Washington, D.C.  20005-4178
Telephone (202) 898-1707
Facsimile (202) 682-9276
ahajjar@odsalaw.com

Dated: November 7, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL POSTAL MAIL HANDLERS )
UNION, A DIVISION OF LABORERS' )
INTERNATIONAL UNION OF NORTH )
AMERICA, )
                   )
           Plaintiff, )
                   )
       v. )      Civil Action No. 1:06VB01986
                   )
                   )
AMERICAN POSTAL WORKERS )      Judge James Robertson
UNION, AFL-CIO )
                   )
       and )
                   )
UNITED STATES POSTAL SERVICE, )
                   )
         Defendants )
_____ )

## STATEMENT OF UNDISPUTED MATERIAL FACTS
## OF THE AMERICAN POSTAL WORKERS UNION, AFL-CIO,
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

      Defendant American Postal Workers Union, AFL-CIO ("the APWU"), submits this

statement of undisputed fact in support of its motion for  summary judgment against the National

Postal Mail Handlers Union, a Division of the Laborers' International Union, AFL-CIO ("the

NPMHU").

      1. The NPMHU is an unincorporated labor organization with its offices at 1101

Connecticut Avenue, N.W., Suite 500, Washington, D.C. 20036.  The NPMHU is party to a

collective bargaining agreement with the Postal Service and represents, for purposes of collective

bargaining, approximately 57,000 employees of the Postal Service in the mail handler craft

nationwide.  Complaint ¶ 4.

2. The APWU is an unincorporated labor organization with its offices at 1300 L Street, N.W., Washington, D.C. 20005. The APWU is party to a collective bargaining agreement with the Postal Service and represents, for the purposes of collective bargaining, approximately 280,000 employees of the Postal Service, including approximately 214,000 in the classification comprising postal clerks nationwide. Complaint ¶ 5.

3. The Postal Service is an independent establishment of the executive branch of the United States Government, as provided by 39 U.S.C. § 201. The Postal Service's headquarters are located at 475 L'Enfant Plaza, S.W., Washington, D.C. 20260. Complaint ¶ 6.

4. The parties have entered into a tripartite agreement entitled "Memorandum of Understanding" concerning "Regional Instruction 399 – Dispute Resolution Procedures" ("MOU"), dated April 16, 1992, which, among other things, establishes procedures (including arbitration) to resolve jurisdictional disputes among the parties. Rec. 0196-0204.

5. On June 27, 2006, an arbitration hearing in Case # F98C-IFJ-01185458 (Loading Dock Scanning)[1] was held before Arbitrator Donald A. Anderson — one of several regional arbitrators who had been appointed by the parties pursuant to their tripartite agreement. At the hearing, the NPMHU and Postal Service contended that the dispute was not arbitrable. The parties agreed to present evidence on the merits of the dispute and have the arbitrator make a ruling in his award on the threshold arbitrability issue. On August 23, 2006, Arbitrator Anderson issued his award in that case (Rec. 0001-0009). The Award found that the dispute was arbitrable and that the Postal Service violated RI-399 (see Rec. 0141-0166) "when it chose to assign a Mail Handler to perform scanning work on foreign mail at the loading dock at the OISC as it did in this case.

---

[1]    The case was combined with F98C-1F-C 0116215. See Rec. 0028.

Such scanning is the primary work of clerk General Expediter(s)." Rec. 0009.

6. NPMHU advocate Don McAlister filed a closing statement for the NPMHU with Arbitrator Anderson in which he argued, among other things, that the dispute was not arbitrable because the APWU filed the dispute in 2001, making it untimely under the MOU, because there was no claim of "new work, new or consolidated facilities, or an operational change" (emphasis omitted). The same closing statement presented arguments on the merits in support of the NPMHU's contention that the work in question was properly assigned to mail handler craft. It did so in a section of the closing statement entitled "On the Merits." According to the statement: "The APWU simply did not present any evidence or testimony at the hearing that would establish this work is improperly assigned to the Mail Handler Craft," supported by three pages of argument on the merits. Rec. 00356-00361.

7. APWU advocate Steven J. Zamanakos filed a post-hearing brief with Arbitrator Anderson. He wrote (Rec. 0013):

> This was a tripartite hearing among three parties; APWU, NPMHU & USPS. All parties had an opportunity to present their respective positions and present testimony and evidence to support their positions. At the conclusion of the hearing, the parties requested to brief both arbitrability and the merits of the case. There was no objection to this request ....

He also argued, among other things, that the dispute was arbitrable, citing postal arbitration awards applying the presumption of arbitrability and against forfeitures. He explained that the dispute originated as a cross-craft grievance filed under the grievance procedure under the APWU-Postal Service collective bargaining agreement, from which it was removed and by agreement referred to the MOU process to make a determination of craft jurisdiction. Zamanakos argued that the parties had agreed to process the dispute in the procedure under the

3

MOU. He contended that the absence of scanning on the facility inventory confirmed the fact

that a jurisdictional dispute existed. On the merits, Zamanakos relied, among other things, on the

fact that the work in question was among the duties of the General Expediter as set forth in the

position description and that management had agreed with the APWU and informed the parties

that "[s]canning is the principle [*sic*] responsibility of the General Expediter." Rec. 0012-0019.

8. Postal Service advocate Drusilla D. Wylie filed a closing brief with Arbitrator

Anderson. The Postal Service said the "procedural issue" was whether the grievance was

properly before a jurisdictional arbitrator and, under the heading "ISSUE": Did the Service

violate the National Agreement, including RI-399, when the APWU contends a Mail Handler

performed scanning duties on the Loading Dock?" (Rec. 0020). The Postal Service argued,

among other things, that the dispute was not arbitrable because it involved existing work (that is,

work in existence at the time of the MOU) and did not involve a new or consolidated facility,

new work, or an operational change. Rec. 0020-0025. The Postal Service also asserted that the

"J" on the docket number "does not signify that the other two parties agree that the issue is truly

a jurisdictional dispute – the 'J' merely is utilized for tracking purposes as already agreed to by

the RDRC [Regional Dispute Resolution Committee] members to identify a case in the system

that the initiating Union asserts is jurisdictional" (Rec. 0022). In addition, the Postal Service

pointed out that the scheduling letter contains a codicil reciting that it "does not constitute a

waiver by either party of any issues of arbitrability or timeliness as it relates in the processing of

the grievances, as it merely serves to confirm to the arbitrator the location, date and time" of the

hearing (Rec. 0026). The Postal Service argued, among other things, that the absence of

scanning on the facility inventory confirmed that the work in question was not specifically

4

assigned to the General Expediter, and although mail handlers had done the work as far back as

1991, the APWU had not initiated a dispute as required under the MOU.  Rec. 0020-0025.

9.  In the APWU's Position Paper for the RDRC, which was an exhibit before Arbitrator

Anderson, Zamanakos argued, among other things, that the facility inventory did not render the

dispute moot and that management had assigned scanning on the Loading Dock and Customs

Dock to the General ExpediteRec.  He also contended that the standard position description

incorporates scanning as one of the duties of the General ExpediteRec.  Rec. 0028-0029.

10.  In the NPMHU's Position Paper for the RDRC, which was an exhibit before

Arbitrator Anderson,  its representative, Ephraim Daniel, argued that mail handlers were already

working in the dispatch unit and that it would not be "efficient or effective" to assign a clerk

Expediter to perform the scanning work; and that mail handlers had performed the duties in

dispute "prior to the move from the Oakland P&DC."  Rec. 0030.

11.  In the Postal Service's position statement for the RDRC (Rec. 0031-0035), Wylie

argued, among other things, that the dispatch unit was staffed by both clerks and mail handlers

and the disputed work had been "done by both crafts without record of a dispute" (Rec. 0031).

She contended that the Postal Service had proposed to amend the existing inventory to state in

part: "Scanning is the principle [*sic*] responsibility of the General Expediter," but that the

NPMHU objected.  The Postal Service asserted that, because no dispute existed at the time of the

MOU, and the APWU did not claim that there was a new or consolidated facility, new work or

an operational change, the MOU prohibited the APWU from initiating a dispute over the

scanning work thereafter.  The Postal Service also asserted that scanning was merely incidental

to the mail handlers' truck loading duties, and that the assignment was proper under "efficiency

5

and economy" principles.  Rec. 0034.

Respectfully submitted,

/s/ Anton G. Hajjar

Anton G. Hajjar (D.C. Bar No. 359267)
O'DONNELL, SCHWARTZ & ANDERSON, P.C.
1300 L Street, NW, Suite 200
Washington, D.C.  20005-4178
Telephone (202) 898-1707
Facsimile (202) 682-9276
ahajjar@odsalaw.com

Dated: November 7, 2007

Slip Copy                                                    Page 1
Slip Copy, 2007 WL 581921 (D.D.C.)
**(Cite as: Slip Copy)**

American Postal Workers Union, AFL-CIO v.
National Postal Mail Handlers Union
D.D.C.,2007.
Only the Westlaw citation is currently available.
  United States District Court,District of Columbia.
  AMERICAN POSTAL WORKERS UNION, AFL-
  CIO, Plaintiff & Counterclaim Defendant,
                          v.
  NATIONAL POSTAL MAIL HANDLERS UNION,
  A Division of the Laborers' International Union of
  North America, AFL-CIO, Defendant & Counter-
                     Claimant,
  andUnited States Postal Service, Defendant & Cross-
                 Claim Defendant.
              **No. 1:05-CV-01290 (AK).**

                   Feb. 21, 2007.

Anton Hajjar, O'Donnell, Schwartz & Anderson,
P.C., Washington, DC, for Plaintiff & Counterclaim
Defendant.
Bruce Richard Lerner, Lisa M. Powell, Bredhoff &
Kaiser, P.L.L.C., Washington, DC, for Defendant &
Counter-Claimant.
Lisa Sheri Goldfluss, United States Attorney's Office,
Washington, DC, for Defendant & Cross-Claim
Defendant.

ALAN KAY, United States Magistrate Judge.
*1 Pending before this Court are cross-motions for
summary judgment by Plaintiff American Postal
Workers Union ("APWU" or "Plaintiff") and
Defendant National Postal Mail Handlers Union
("NPMHU" or "Defendant").[FN1] Defendant United
States Postal Service (the "Postal Service") opposes
NPMHU's motion for summary judgment (the
"NPMHU Motion") [22], which requests
confirmation of an underlying arbitration award,
while the Postal Service assents to APWU's motion
for summary judgment (the "APWU Motion") [21],
which requests that such award be vacated, or
alternatively, that the case be remanded to the
arbitrator for clarification of his award. A hearing on
these two Motions was held on December 7, 2006,
and during that hearing, the parties discussed the fact
that the arbitrator who entered the Opinion and
Award no longer serves as an arbitrator. At the
conclusion of the hearing, the Court directed the

parties to provide supplemental briefing on the issue
of the unavailability of the original arbitrator and
whether this fact would preclude a remand. The
parties provided this Court with their supplemental
briefs in late December 2006.[FN2]Upon careful
consideration of the arguments presented by the
parties, for reasons set forth below, APWU's Motion
[21] is DENIED, and NPMHU's Motion [22] is
GRANTED, with the effect that the arbitration award
is confirmed. An appropriate Order accompanies this
Memorandum Opinion.

> FN1. The parties consented to this case
> being referred to the undersigned for all
> purposes and trial. (*See* February 21, 2006
> Minute Order by the Honorable Reggie B.
> Walton, referencing the Meet and Confer
> Statement [17].)

> FN2. In their supplemental briefing, the
> Postal Service reiterates its request that the
> arbitration award be vacated and the case be
> remanded to the arbitration panel for a *de
> novo* hearing; the NPMHU reiterates its
> request that the arbitration award be
> affirmed and the APWU takes the position
> that "the appropriate remedy is not for the
> Court to remand for arbitration but to vacate
> the [arbitrator's] [a]ward or deny
> enforcement of the [arbitrator's] [a]ward
> (which will have the same effect)." (Position
> of APWU on Remand to an RI-399
> Regional Arbitrator [31] at 2.) The Court
> notes that merely vacating the arbitration
> award without remanding it to the arbitration
> forum may preclude the NPMHU from
> obtaining any determination on the merits of
> this issue since the dispute relates to
> grievances originally filed in October 1993,
> and it is unclear whether NPMHU could
> seek any relief at this late date.

### I. Background

In their Statements of Material Facts Not in Dispute,
both the NPMHU and APWU set forth extensive
background information, summarized as follows. The
NPMHU and the APWU are labor organizations
representing employees of the Postal Service.
(NPMHU Statement of Undisputed Material Facts

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

A

Blumberg No. 5119

("Statement") at ¶ 1.) [FN3] The Postal Service recognizes NPMHU and APWU as the collective bargaining representatives for all mail handlers and clerical employees, respectively. (*Id.* at ¶¶ 2-3.)The Postal Service has entered into separate collective bargaining agreements with the NPMHU and APWU (also known as the NPMHU-USPS National Agreement and the APWU-USPS National Agreement, respectively).(*Id.* at ¶ 4.) The grievance procedure is separate for each union under each collective bargaining agreement. (APWU Statement of Undisputed Material Facts ("Statement") at ¶ 2.) Article 15 of each collective bargaining agreement sets forth the procedure for bringing and processing grievances under such agreements. (NPMHU Statement at ¶ 5.)

> FN3. In citing to specific paragraphs contained in the parties' statements of undisputed material facts and to pages from the parties' pleadings, the Court will not reiterate the underlying supporting citations to the record referenced therein.

In 1979, the Postal Service issued Regional Instruction No. 399 ("RI-399") delineating the criteria for making craft assignments; i.e., whether the clerk or the mail handler craft will be assigned to carry out various functions. (NPMHU Statement at ¶ 7, APWU Statement at ¶ 2.) On April 16, 1992, the two unions and the Postal Service entered into an tripartite agreement entitled "Memorandum of Understanding" ('MOU") pertaining to RI-399 Dispute Resolution Procedures (APWU Statement at ¶ 3.) Following the adoption of the RI-399 Dispute Resolution Procedures in 1992, jurisdictional disputes were to be resolved by tripartite Dispute Resolution Committees, or by arbitration, if not resolved by the Committees. (NPMHU Statement at ¶ 10; APWU Statement at ¶ 4.) Disputes regarding the performance of work in violation of the craft assignments, which are referred to as "cross-craft" or "crossing craft" grievances, were still to be brought as grievances under Article 15 of the collective bargaining agreements. (NPMHU Statement at ¶ 11.) [FN4]

> FN4. For purposes of clarification, the NPMHU explains that:
> A jurisdictional dispute is one in which the grievant union seeks either to change what it acknowledges to be an established craft

assignment in the other union's favor, or to determine an undecided craft assignment; whereas a cross-craft dispute is one in which the grievant union seeks to enforce what it contends is an established craft assignment in its favor.
(NPMHU Reply at 3, n. 1.) During the period 1979 through 1992, NPMHU and APWU filed their grievances under their respective collective bargaining agreements if they "believed that the Postal Service mistakenly assigned functions to the other craft."(APWU Statement at ¶ 3.) If the grievance was not resolved during the grievance procedure, it would subsequently be heard by an arbitrator selected by either NPMHU and USPS or APWU and USPS, and the party who was not involved in the arbitration might seek to intervene in such arbitration. (APWU Memorandum in support of Motion at 4.) If the arbitrator did not allow intervention, the other union could file its own grievance. (*Id.*)

*2 The dispute underlying this case arises from an arbitration award, issued by an arbitrator, Eric Schmertz, (hereinafter, the "Arbitrator") in favor of NPMHU. The arbitration was set for the purpose of resolving two grievances that were originally filed in October of 1993 by members of Local 300 of the NPMHU, pursuant to its collective bargaining agreement with the Postal Service. These grievances challenged the Postal Service's decision to staff the Label Room and Duplicating Room of the Brooklyn General Mail Facility with clerical employees represented by APWU, rather than mail handlers represented by NPMHU. (NPMHU Motion, Exh. 9 [Declaration of Lawrence Hill] at ¶ 18.] [FN5]

> FN5. Lawrence Hill is an Executive Board Member for NPMHU Local 300, which represents Mail Handlers in New York, New Jersey and Connecticut. Mr. Hill has also been an arbitration advocate for Local 300 since 1987, and has served as a Shop Steward and Chief Shop Steward for Local 300. (Exh. 7 at ¶¶ 1-2.)

In November 1993, and again in March 1994, the Postal Service denied the grievances during various stages of the contractual grievance procedure, and accordingly, the grievances were then certified for arbitration and scheduled for a March 1999 hearing. (Hill Declaration at ¶¶ 19-21.) In February 1999,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

approximately six years after the grievance procedure commenced and about one month prior to scheduled arbitration, the Postal Service unilaterally referred the grievances to the RI-399 dispute resolution process because it believed that the grievances presented jurisdictional disputes.[FN6](APWU Statement at ¶ 6; NPMHU Statement at ¶¶ 20-21.)

> FN6. NPMHU asserts that the underlying grievances were presented by the NPMHU as cross-craft grievances because the grievances alleged that the disputed work "clearly [encompassed] Mail Handler functions" and "cited five specific USPS national standard position descriptions encompassing those functions."(NPMHU Reply at 3; *see* Exh. 7 at NPMHU 0048-49 [grievances], NPMHU 0041-47 [five USPS national standard position descriptions.] )

In accordance with the RI-399 dispute resolution process, the grievances were referred to the Local Dispute Resolution Committee but because they were not resolved by such Committee, they were then scheduled for arbitration before Arbitrator Eric Schmertz, who served on a panel of arbitrators appointed by NPMHU, APWU, and the Postal Service. (Hill Declaration at ¶¶ 23-24; APWU Motion, Exh. 1 [Declaration of Michael Gallaher] at ¶ 6.) Arbitrator Schmertz held hearings on January 21, 2005 and February 18, 2005. (Hill Declaration at ¶ 25.) In an Opinion dated March 23, 2005, the Arbitrator determined that "[t]he grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room [at the Brooklyn, New York General Mail Facility] are arbitrable under the [Mail Handlers'] collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum." (APWU Motion, Exh. 3 to Gallagher Declaration [Opinion and Award] at 7.) APWU and the Postal Service challenge the Arbitrator's decision.

The parties agree that the sole issue to be determined by this Court is whether the Arbitrator exceeded his authority by remanding the NPMHU's grievances for further processing under the grievance procedure contained in the bilateral collective bargaining agreement between NPMHU and the Postal Service, and consequently, whether the Arbitrator's award should be affirmed or vacated.

## II. Legal Standard

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-52 (1986). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. However, the nonmoving party must present more than a "scintilla of evidence" and must come forward with specific facts that would enable a reasonable jury to find in its favor. *Id.* at 252;*Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the evidence presented by the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted."*Anderson,* 477 U.S. at 249-50 (citations omitted).

*3 Under Fed.R.Civ.P. 56(c), a court should grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions ..., together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."*See*Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. at 323;*Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. The nonmoving party must demonstrate specific facts in the record which create a genuine issue as to a material fact to oppose the motion for summary judgment. The party opposing summary judgment must adduce evidence which, when considered in light of his burden of proof at trial, could be a basis for the jury finding for the nonmoving party. *Alcman Services Corp. v. Bullock,* 925 F.Supp. 252, 256 (D.N.J.1996), *aff'd,*124 F.3d 185 (3d Cir.1997). To be genuine, the issue must be supported by admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See Anderson,* 477 U.S. at 248;*see also Laningham v. U.S. Navy,* 813 F.2d 1236, 1242-43 (D.C.Cir.1987).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. The nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248-49. The adverse party must do more that simply "show that there is some metaphysical doubt as to the material facts."*Matsushita Electric Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### B. Review of Arbitration Awards

It is well established that the scope of review of labor arbitration awards is "extremely narrow." *APWU v. USPS,* 52 F.3d 359, 361 (D.C.Cir.1995).*See also Utility Workers Union of Am., Local 246 v. NLRB,* 39 F.3d 1210, 1216 (D.C.Cir.1994) (Review of labor arbitration awards calls for "the greatest deference imaginable ..."); *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17,* 531 U.S. 57, 62 (2000) (Such awards may be set aside only "in rare instances.") "A reviewing court is only to decide whether the grievance is arbitrable, and, if so, whether the arbitrator's award 'draws its essence from the collective bargaining agreement.' " *Washington Hospital Center v. Service Employees International Union Local 722,* 796 F.Supp. 574, 576 (D.D.C.1992) (citing *United Steelworkers of America v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 597 (1960)).*See also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 37 (1987) (quoting *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568 (1960)) (In reviewing labor arbitration awards, a court has "no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim....") Similarly, an "arbitrator's view of the issues submitted to him for arbitration therefore receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement."*.Madison Hotel v. Hotel Employees Restaurant Employees International Union, Local 25,* 144 F.3d 855, 857 (D.C.Cir.1998).

*4 In cases where "[a]n arbitration award [ ] fails to draw its essence from the collective bargaining agreement[,]" the award cannot stand. *Id.,* 144 F.3d at 858 (citing *United Steelworkers of America v. Enterprise* Wheel, 363 U.S. at 597). The arbitrator's award "cannot simply reflect the arbitrator's own notions of industrial justice."*United Paperworkers Int'l Union,* 484 U.S. at 38. The arbitrator is not prohibited from looking beyond the express

provisions of the contract and consider the parties' past practices, industry practices, and the structure of relevant agreements, in the course of formulating an award. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 580-81 (1960)."An arbitrator cannot, [however,] 'render [ ] a judgment based on external legal sources, wholly without regard to the terms of the parties' contract' " *Madison Hotel,* 144 F.3d at 859 (quoting *American Postal Workers Union v. United States Postal Service,* 789 F.2d 1, 8 (D.C.Cir.1986)). "But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco,* 484 U.S. at 38.

The Supreme Court has held that ambiguity is not a reason to refuse to enforce an arbitration award, even in the case where the ambiguity permits an inference that the arbitrator may have exceeded his authority. *Enterprise Wheel,* 363 U.S. at 598. "Arbitrators have no obligation to the court to give their reasons for an award."*Id.* Even if the basis for an arbitrator's decision is ambiguous, courts are not entitled to review the merits of the underlying contract dispute. *See W.R. Grace & Co. v. Local Union 759, Int'l Union,* 461 U.S. 757, 764 (1983).

The "scope of an arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator."*Id.,* 461 U.S. at 765;*see also Madison Hotel,* 144 F.3d at 857. The arbitrator's conclusions regarding the scope of his authority are thus entitled to judicial deference similar to that given to an arbitrator's interpretation of a collective bargaining agreement. *Id.*

The Arbitrator began his inquiry into the staffing dispute grievances by noting that the threshold issue was the "contention of non-arbitrability [asserted] by both the Postal Service and the Postal Workers."(Opinion and Award at 2.) The Arbitrator explained that after the two grievances were processed through the NPMHU's collective bargaining agreement with the Postal Service, they were denied by the Service. (*Id.*) In accordance with that grievance procedure, the grievances were then certified for arbitration by the Postal Service and the NPMHU, on December 30, 1998, and scheduled for a March 2, 1999 hearing [before a different arbitrator]. Approximately one month prior to that hearing date,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

however, "the [Postal] Service's Labor Relations Specialist removed these cases from the contract Arbitration Docket and referred both to the RI-399 forum."(*Id.* at 3.)

**\*5** During the arbitration proceeding, APWU and the Postal Service asserted that the grievances "under RI-399 were both untimely and hence not arbitrable on the merits."(*Id.*) The Arbitrator noted that the NPMHU did not file its grievances protesting clerk assignments until October 16, 1993, even though the staffing of the Copy room and Label room commenced at the Brooklyn facility in July 1992. (Opinion and Award at 3.) APWU and the Postal Service argued that "under [the] MOU on Dispute Resolution Procedures [dated April 16, 1992], the MHU was required to have filed grievances by April 29, 1992, over the work in question for the dispute to be heard, unless there was an operational change, new work in a new facility, or a new facility or consolidation of facilities."(APWU Statement at ¶ 7.) APWU and the Postal Service accordingly concluded that because the NPMHU's dispute was not filed by the April 29, 1992 deadline, and the work in dispute was not new work, or work being done at a new facility, or work resulting from an operational change, "the dispute was not arbitrable." (*Id.*)[FN7] The Arbitrator concluded that NPWHU's grievances were not timely filed but in so doing, "[t]he arbitrator did not rule on this [particular] argument."(APWU Statement at ¶ 7.) Instead, the Arbitrator agreed with an alternative argument propounded by the Postal Service.

> FN7. The position advanced by the Postal Service and the APWU seeks a determination that would deprive the NPMHU of any opportunity for a resolution on the merits of its grievances.

The Postal Service [alternatively] relied on a bilateral agreement between NPMHU and itself, which set deadlines applying to both cross-craft grievances and jurisdictional disputes, in support of its contention that the grievances were not timely. That bilateral agreement, dated November 24, 1992, provided that "the Mailhandlers Union will hold all Crossing Craft and RI-399 grievances for 120 Days, commencing with the signing of this agreement [,] [then,] any grievances filed pertaining to the above mention[ed] areas [ ] will not after the 120 Day period, be considered [ ]." (Opinion and Award at 6, quoting November 24, 1992 Letter Agreement)

The Arbitrator noted that "[t]he [February 22, 1999] referral of these grievances to the RI-399 Forum placed in issue whether the Mail Handlers grievances were filed within the prescribed 120 day period [and][t]hey were not [because] October 1993 is eleven months later [than the November 1992 Letter Agreement]." (APWU Statement at ¶ 8, Opinion and Award at 6.) In his Opinion and Award, the Arbitrator also referenced a Letter Agreement dated February 3, 1993, which attempts to clarify some issues concerning the November 24, 1992 Letter Agreement, and states in pertinent part that "[d]isputes that are not so resolved, [pursuant to the 120 day grievance 'moratorium'] will be identified and Article 7 and/or RI-399 Grievances will be filed after March 25, 1993[and][t]he 14 Day filing period shall begin on March 26, 1993."(Opinion and Award at 4, quoting February 3, 1993 Letter Agreement.) The Arbitrator found that the grievance filing dates of October 1993 clearly "exceeded that 14-day statute of limitations."(Opinion and Award at 4.)

**\*6** The Arbitrator subsequently addressed the issue of waiver [of the untimeliness], which was raised by NPMHU during the hearing. (NPMHU Statement at ¶ 25.) The Arbitrator found that the Postal Service's failure to object to the untimeliness of the grievances "constituted a waiver of that defense" pursuant to the collective bargaining agreement and accordingly, the disputes could still be resolved pursuant to the collective bargaining agreement. (Opinion and Award at 4-5.)[FN8] The Arbitrator found that waiver did not similarly apply in the RI-399 forum, because "[a]s to the RI-399 procedure, that defense [of untimeliness], asserted by the clerks (and apparently joined in by the Service) was not waived and therefore obtains."(Opinion and Award at 5.) The Arbitrator thus determined that: "[t]he grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room are arbitrable under the collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum."(Opinion and Award at 7.)[FN9]

> FN8. Article 15.3B of the collective bargaining agreement states in part that "if the Employer fails to raise the issue of timeliness at Step 2, or at the step at which the employer or Union failed to meet the prescribed time limits, whichever is later, such objection to the processing of the grievance is waived."(Opinion and Award at 4-5, quoting Article 15.3B.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN9. In the instant case, "the grievances were treated as cross-craft grievances by the Postal Service and the NPMHU for more than five years, and they were scheduled for arbitration as cross-craft grievances under the NPMHU-USPS National Agreement in 1999."(NPMHU Reply at 3-4.) The grievances were then unilaterally transferred to the RI-399 forum by the Postal Service one month prior to the arbitration scheduled pursuant to the NPMHU collective bargaining agreement. The Postal Service proffers no reason why it waited over five years to make a determination that the grievances were jurisdictional in nature, thus necessitating a transfer to a forum where such grievances would be considered untimely. The Arbitrator found that the [Postal Service's] transfer of the disputes to the RI-399 arbitration process effectively "den[ied] the Mail handlers access to a due process forum, either under RI-399 or under the collective bargaining agreement."(Opinion and Award at 6-7.) During the arbitration, NPMHU sought to have the grievances remanded to the Article 15 process [the grievance-arbitration provision of the NPMHU-USPS National Agreement].

APWU argues that:
The [arbitrator's] decision [that the MHU dispute was beyond his jurisdiction to consider] was correct, but not for the reasons he gave. The arbitrator exceeded his authority, which is limited to resolving disputes under the Dispute Resolution Procedures established under the MOU, by enforcing a void bilateral agreement between the MHU and the Postal Service.

(APWU Memorandum in support of Motion at 14.)

This Court is charged with the task of determining whether the arbitrator exceeded his authority in referring the grievances to the grievance-arbitration process under the NPMHU's collective bargaining agreement with the Postal Service. APWU requests that this Court overturn the Arbitrator's award in this case on grounds that the Arbitrator's award was "in violation of the jurisdiction conferred on the arbitrator by the MOU on Dispute Resolution Procedures" based upon their contentions that: 1) under the terms of the MOU, "all bilateral agreements such as the one relied on by Arbitrator Schmertz are null and void;" 2) the MOU supplants the grievance procedures under the collective

bargaining agreement "with respect to all jurisdictional disputes;" 3) the Arbitrator was not empowered to direct a dispute to grievance resolution other than resolution under the MOU; and 4) the MOU did not give the Arbitrator jurisdiction to make a determination that the dispute could be heard under the collective bargaining procedures. (APWU Statement at ¶ 11.) [FN10]

FN10. The Postal Service indicates that:
[it] agrees with the APWU's first argument that bipartite agreements, such as the one the arbitrator relied upon here in concluding that the NPMHU's grievances were untimely in the RI-399 forum, that purport to cover jurisdictional disputes between the three parties in the RI-399 process are null and void under the applicable tripartite agreements.
(Postal Service Opposition to NPMHU Motion and Response to APWU Motion at 5.) This is inconsistent with the argument made by the Postal Service at the hearing before Arbitrator Schmertz.

Contentions numbered 1 and 2 above are undisputed or inconsequential to the determination of whether the Arbitrator exceeded his authority when he returned the grievances to the collective bargaining forum. As a preliminary matter, the parties acknowledge that bilateral agreements set forth the procedures used to resolve cross-craft disputes while jurisdictional disputes are resolved pursuant to the procedures set forth in the MOU. NPMHU does not dispute APWU's contention that "the bilateral agreement in question was void to the extent that it purported to alter the parties' obligations with respect to the time limits for asserting jurisdictional claims."(NPMHU Reply at 13.) NPMHU asserts however that the Arbitrator's reliance on that agreement was "harmless error" because the Arbitrator "*agreed* with the APWU and the Postal Service that the NPMHU's alternative jurisdictional claims were time-barred *even under the extended time limit* [and][t]hus, the APWU and Postal Service [cannot] argue that they were harmed by the Arbitrator's reliance ..., but complain only that the Arbitrator gave the wrong reason for reaching the correct result on the timeliness issue presented." (NPMHU Reply at 14; *see* APWU Opposition at 2 [recognizing that the decision that the Mail Handlers' dispute was not arbitrable in the RI-399 forum was correct but not for the reason given].) NPMHU asserts that "[h]armless error is *not* a valid ground for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

vacatur of an arbitration award."(Reply at 14, citing *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir.2005); *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir.2003)).

**\*7** With regard to APWU's contention number two above, all three parties agree that "the RI-399 dispute resolution procedures set forth in the parties' tripartite agreements are the agreed-upon procedures for resolving jurisdictional disputes among the parties."(Postal Service Opposition/Response at 7, citing APWU and NPMHU Briefs.) [FN11] The parties disagree however on whether the underlying grievances involve jurisdictional or cross-craft disputes, and such disagreement was not specifically resolved by the Arbitrator, when he concluded that the grievances could be arbitrated under the collective bargaining agreement, without making a specific finding that such grievances constituted cross-craft grievances. The Postal Service argues that the Arbitrator "did not determine that the dispute presented by the grievances was not jurisdictional in nature [and,] [t]o the contrary, two of [his] statements from the Award strongly suggest ... the polar opposite...." (Postal Service Opposition and Response at 7-8.) The Postal Service focuses on two statements by the Arbitrator, which are taken out of context, and uses them to support its assumption that the Arbitrator considered the dispute to be jurisdictional in nature.

> FN11. The parties also acknowledge that "[e]ven after 1992, where the craft assignment, or jurisdiction, of work has already been decided, disputes over the performance of work in violation of craft assignments are still brought as grievances under Article 15 of the National Agreements."(NPMHU Statement at ¶ 11.)

This Court finds that even though the Arbitrator's Opinion and Award fails to specify whether the grievances involve cross-craft or jurisdictional disputes, this deficiency does not invalidate the Award and mandate a remand to the Arbitrator [or an arbitration panel.] *See Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532-33 (D.C.Cir.1989) (where the D.C. Circuit ordered the district court to confirm an arbitration award, holding that "arbitral awards may be made without explanation" and it is the district court's duty to confirm an award when the arbitration record discloses a "permissible route" to the arbitrator's

stated conclusion. In *Sargent*, the district court had ordered a remand to the arbitration panel on grounds that "in the absence of an explanation it could not be sure that the arbitrators had not exceeded their powers."882 F.2d at 532 (internal quotation marks omitted.) Nor should this Court make an independent determination regarding the classification of grievances but rather, this Court's inquiry focuses on whether there is a lawful "possible interpretive route" to the Arbitrator's decision to return the NPMHU's grievances to the Article 15 process. *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir.1991).*See also W.R. Grace & Co.*, 461 U.S. at 764 (finding that courts are not entitled to review the merits of a contract dispute even if the basis of the arbitrator's decision is ambiguous.)

APWU contends that the Arbitrator was not empowered to direct a dispute to grievance resolution because this would have entailed a determination that there was a cross-craft dispute whereas in this case, "the only issue the parties submitted to Arbitrator Schmertz was whether the jurisdictional dispute before him was timely, and [therefore] this was the only issue he decided."(APWU Opposition [26] at 4.) APWU explains that the focus of the Arbitrator was "timeliness, not whether the dispute was in reality a cross-craft grievance."(APWU Opposition at 5.) This assertion contradicts the language of the Opinion and Award, wherein the Arbitrator states that he "would *first* decide the *arbitrability issues.*" (Opinion and Award at 1.) (Emphasis added.) NPMHU suggests that there is nothing in the Award that limits the first phase of arbitration to consideration of timeliness and in fact, "the issues of timeliness and the proper forum were inextricably intertwined here, given the Arbitrator's finding that the Postal Service waived its timeliness objection within the Article 15 process but not within the RI-399 forum."(NPMHU Reply [28] at 9-10, n. 4.) A review of the Arbitrator's Opinion and Award indicates that he considered the issue of arbitrability to encompass issues of timeliness of the grievances and waiver of any untimeliness in both the collective bargaining forum and the RI-399 forum. In connection with his determination that the RI-399 time limits prohibited the parties from proceeding in that forum, he recognized that he did not have authority to ignore those limits. He did however note that he "[had] authority to reinstate or reactivate the adjudicatory forum in which the disputes remain arbitrable-namely the arbitration provisions of the collective bargaining agreement between the Mail Handlers and the Service."(Opinion and Award at 7.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*8** The Arbitrator's assertion of authority is consistent with NPMHU's position during the hearing that the Arbitrator could refer the disputes back to the Article 15 grievance process under the NPMHU-USPS collective bargaining agreement. (NPMHU Statement at ¶ 26.) NPMHU specifically noted that returning the dispute to the Article 15 grievance process would be consistent with the August 2000 Settlement Agreement's provision stating that "grievances not dealing with jurisdictional issues shall not be referred to the RI-399 Dispute Resolution Procedures and, if such cases already have been referred, shall be removed from the RI-399 Dispute Resolution Procedures for further processing under the terms of Article 15 of the appropriate National Agreement."(NPMHU Memorandum at 8.) In its Memorandum, NPMHU references several cases in which arbitrators have determined that they have the authority to return a grievance to the contractual grievance process under Article 15 of the relevant National Agreement, where such cases involve underlying cross-craft grievances.[FN12] (NPMHU Memorandum at 18.)

> FN12. NPMHU notes that, in another case involving Arbitrator Schmertz, the APWU took a position contrary to its argument herein when it requested that certain disputes be adjudicated under Article 15 of the collective bargaining agreement between the APWU and the Postal Service, and it was acknowledged by the parties therein to be within the arbitrator's authority to return a grievance to the Article 15 process where such case involved a cross-craft grievance. (NPMHU Memorandum at 18.)

In this case, APWU and the Postal Service fail to adequately demonstrate that the Arbitrator lacked the authority to transfer these grievances back to the Article 15 forum, and therefore that the Award should be vacated or the case remanded.[FN13]While the Award is not a model of clarity in explaining the reasons for the transfer, the Award should be confirmed because the Arbitrator's determination drew its "essence" from the relevant labor contracts. *W.R. Grace & Co.,* 461 U.S. at 765;*Madison Hotel,* 144 F.3d at 858. This Court further finds that the Arbitrator's Award is entitled to deference because there was a "possible interpretive route" to his Award, *Chicago Typographical Union,* 935 F.2d at 1506, consistent with the August 2000 Settlement Agreement and prior arbitration awards in which arbitrators returned certain grievances to an alternate forum. *See United Steelwokers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 580-81 (whereby an arbitrator may take into account the parties' past practices, industry practices and the structure of relevant agreements in fashioning his award.)[FN14]

> FN13. APWU does not address NPMHU's assertions regarding the August 2000 Settlement Agreement or the cases in which arbitrators have returned grievances to another forum. The Postal Service claims that such cases are inapposite insofar as they support the proposition that "an RI-399 arbitrator may return only non-jurisdictional disputes to the Article 15 grievance-arbitration process" and this case involves a jurisdictional dispute. (Postal Service Opposition [23] at 9, n. 3.)

> FN14. The Postal Service argues that "courts [regularly] choose to remand ambiguous awards to the arbitrator for clarification."(Postal Service Opposition at 11, string citing cases.) In the instant case, while the Arbitrator's explanation for the "remedy" he selected is not unambiguous, the Award is not ambiguous because it clearly provides that NPMHU's grievances should be returned to the Article 15 forum for resolution of claims asserted in those grievances.

D.D.C.,2007.
American Postal Workers Union, AFL-CIO v. National Postal Mail Handlers Union
Slip Copy, 2007 WL 581921 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
NATIONAL POSTAL MAIL HANDLERS   )
UNION, A DIVISION OF LABORERS'  )
INTERNATIONAL UNION OF NORTH    )
AMERICA,                        )
                               )
                Plaintiff,      )
                               )
        v.                      )   Civil Action No. 1:06CV01986
                               )
                               )
AMERICAN POSTAL WORKERS UNION,  )   Judge James Robertson
AFL-CIO                         )
                               )
            and                 )
                               )
UNITED STATES POSTAL SERVICE,   )
                               )
            Defendants          )
_____)
```

## **ORDER**

The motion of the American Postal Workers Union, AFL-CIO,
for summary judgment against the National Postal Mail Handlers
Union, a Division of the Laborers' International Union of North
America, is granted, and the complaint is dismissed with
prejudice.


                        James Robertson
                        United States District Judge


Dated: