## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————
                                       )

| | | |
|---|---|---|
| **NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO,** | ) ) ) ) ) ) | |
| **Plaintiff & Counter-Claim Defendant,** | ) ) ) | |
| **v.** | ) ) | Civil Action No. 1:06CV1986 (JR) |
| **AMERICAN POSTAL WORKERS UNION, AFL-CIO,** | ) ) ) | |
| **Defendant & Counter-Claimant,** | ) ) | |
| **and** | ) ) | |
| **UNITED STATES POSTAL SERVICE,** | ) ) | |
| **Defendant & Cross-Claim Defendant.** | ) ) ) | |

—————————————————————————)

### UNITED STATES POSTAL SERVICE'S MOTION FOR SUMMARY JUDGMENT

       Defendant and Cross Claim Defendant United States Postal Service moves this Court, pursuant to Fed. R. Civ. P. 56, for summary judgment in this case as there are no genuine issues of material fact and judgment for the Postal Service should be entered as a matter of law.  The Court is respectfully referred to the attached memorandum of points and authorities and statement of material facts not in dispute.  The Administrative Record is being filed separately by the National Postal Mail Handlers Union.

       A proposed order is attached.

                                Respectfully submitted,

                            _____/s/_____

                            JEFFREY A. TAYLOR , Bar # 498610
                            United States Attorney

_____/s/_____

RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney


_____/s/_____

CLAIRE WHITAKER, Bar # 354530
Assistant United States Attorney
555 Fourth Street, NW, Tenth Floor
Washington, DC 20530
202-514-7137

Of Counsel:
DENNIS E. SZYBALA
United States Postal Service
Law Department

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO,**<br><br>       **Plaintiff & Counter-Claim Defendant,**<br><br>       **v.**<br><br>**AMERICAN POSTAL WORKERS UNION, AFL-CIO,**<br><br>       **Defendant & Counter-Claimant,**<br><br>       **and**<br><br>**UNITED STATES POSTAL SERVICE,**<br><br>       **Defendant & Cross-Claim Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 1:06CV1986 (JR)**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____)

## UNITED STATES POSTAL SERVICE'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the United States Postal Service ("Postal Service") respectfully moves this Honorable Court for the entry of summary judgment vacating the arbitration award at issue here. There is no genuine issue of material fact and, upon the undisputed facts, summary judgment vacating the arbitration award entered by Arbitrator Donald J. Anderson is warranted in this case. As demonstrated below, the arbitration award does not "draw its essence" from the parties' agreement because (1) Arbitrator Anderson failed to determine the jurisdictional issue he was asked to resolve, and (2) his award on the merits of the dispute is in derogation of the parties' agreement.

## I.    Factual Background

The facts material to this motion are not in genuine dispute and are fully set forth in the record of the arbitration proceedings.[1]

Plaintiff National Postal Mail Handlers Union ("NPMHU") and Defendant American Postal Workers Union ("APWU") are labor organizations recognized by the Postal Service as the collective bargaining representatives for all mail handlers and clerical employees, respectively. In 1979, the Postal Service issued Regional Instruction No. 399 ("RI-399") delineating the criteria for assigning particular work to employees in a collective bargaining unit, *i.e.*, whether particular work should be performed by the APWU clerk craft or the NPMHU mail handler craft. On April 16, 1992, the two unions and the Postal Service entered into a tripartite agreement entitled "Memorandum of Understanding pertaining to RI-399 Dispute Resolution Procedures" (the "MOU").  (J.Ex.1 at 196-203).   The MOU states, inter alia

> Effective with the signing of this agreement, no new disputes will be initiated at the local level by either union challenging jurisdictional[2] work assignments in any operations as they currently exist.  Except as otherwise provided in the New or Consolidated Facilities, New Work, or Operational Change sections contained in this memorandum, all local craft jurisdictional assignments which are not already the subject of a pending locally initiated grievance will be deemed as a proper assignment for that facility.

---

[1]    The parties have agreed to jointly submit the relevant portions of the record in this case as Joint Exhibits. Joint Exhibit ("J.Ex.1") consists of the relevant portions of materials disclosed by the Postal Service, and Joint Exhibit 2 ("J.Ex.2") consists of the relevant portions of materials disclosed by the APWU. These materials are paginated as they were in the parties' disclosures. The parties have also stipulated to the authenticity of the documents comprising these exhibits.

[2]    A jurisdictional dispute is one in which the grievant union seeks to either change what it acknowledges to be an established craft assignment in the other union's favor, or to determine an undecided craft assignment.

(J.Ex.1 at 196).  Following adoption of the MOU, new jurisdictional disputes were to be resolved by tripartite Dispute Resolution Committees, or by arbitration if not resolved by the committees. The Postal Service and both unions subsequently agreed to a "question and answer document" interpreting the MOU which provides, in relevant part:

> 3.   If a grievance exists or is filed alleging a violation of the contract other than RI-399 (e.g. Article 7.2) and one of the parties believes the issue in the grievance constitutes a jurisdictional dispute, what if anything should be done with the grievance?
>
> Answer:   It must be referred to the Dispute Resolution Committee for an initial determination as to whether or not it involves a jurisdictional claim.  If it is determined it involves a jurisdictional dispute, the grievance will be processed in the Dispute Resolution Procedures.  If the Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, *that question is appealable* through the Dispute Resolution Procedures up to and including arbitration for resolution *prior to the parties addressing the merits of the dispute.*

(J.Ex.1 at 213) (emphasis added).

## A.   The Anderson arbitration

The dispute underlying this case concerns the proper collective bargaining unit (or craft) to perform a certain scanning function on  international mail at the International Mail Facility ("IMF") in Oakland, California.  After an international mails operation moved to a new facility in 2001, the parties opened discussions relating to the "RI-399 Installation Inventory" – a compilation of which duties are assigned to which collective bargaining unit at the facility.  In a letter dated April 30, 2001, the USPS "sought to clarify existing assignments only to avoid potential crossing craft issues in the future,"(J.Ex.1 at 32) and proposed an amendment stating "Scanning is the principle responsibility of the General Expediter [an APWU position]" with Mail Handlers allowed to scan only "[i]n the event of an unforeseen situation/emergency."  *Id.* Disputing that position, the APWU grieved, claiming a violation of Articles 7 and 15 of the

3

collective bargaining agreement and RI-399 on the grounds the Postal Service did not assign the scanning work exclusively to APWU employees.  The grievance was processed under Article 7 of the APWU's collective bargaining agreement.  However, because the APWU contended the scanning assignment constituted a jurisdictional dispute, the Postal Service and the APWU agreed to refer the dispute to the tripartite Local Dispute Resolution Committee for resolution under the RI-399 procedures.  (J.Ex.1 at 50-51).  The letter reflecting that agreement incorporated verbatim the answer to question 3 of the  "Q and A" interpretive document:  "If the Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, *that question is appealable* through the Dispute Resolution Procedures up to and including arbitration *for resolution prior to the parties addressing the merits of the dispute*."  (J.Ex.1 at 50) (emphasis added).

The dispute was thereafter referred to arbitrator Donald J. Anderson, one of the arbitrators agreed upon by all three parties for the RI-399 Jurisdictional Dispute Arbitration Panel.  The letter scheduling the arbitration for hearing – signed by all three parties – expressly advised arbitrator Anderson that "*[t]his letter does not constitute a waiver by either party of any issues of arbitrability or timeliness as it relates to the processing of the grievances*, as it merely serves to confirm to the arbitrator the location, date and time . . ."  (J.Ex.1 at 26) (emphasis added)

A hearing before Arbitrator Anderson took place on June 27, 2006.  The arbitrator heard opening statements, heard testimony, and received documentary evidence from all three parties. The parties subsequently submitted written closing arguments.  (J.Ex.1 at 3)

4

The Postal Service argued to the arbitrator that the dispute was not properly arbitrable as a "jurisdictional" dispute under RI-399 because it dealt only with the assignment of "already existing work at the International Mail Facility" and did not fall within the scope of the RI-399 MOU which applied only (1) in cases of new or consolidated facilities, (2) new work, or (3) operational changes. (J.Ex.1 at 21). Responding to the APWU's assertion in opening argument "that the grievance was jurisdictional as evidenced by the three signatures of the three members of the Regional Dispute Resolution Committee on the scheduling letter," the Postal Service pointedly relied on scheduling letter which expressly stated: "This letter does not constitute a waiver of arbitrability or timeliness . . . " (J.Ex.1 at 22, 26). The NPMHU also argued the assignment was not a jurisdictional dispute within the meaning of RI-399 because it did not concern a "New or Consolidated Facility, New Work, or Operational Change." (J.Ex.1 at 356-57)

The APWU argued the assignment was arbitrable under RI-399 because the Local and Regional Dispute Resolution Committees had agreed to submit the dispute to RI-399, thus ignoring the language of the scheduling letter that the letter "does not constitute a waiver of arbitrability . . ." (J.Ex.1 at 15). The APWU acknowledged that no "new work" or other factor was involved (J.Ex.1 at 14-15), but urged the scanning work properly belonged to the clerk craft based on a comparison of the clerk and mail handlers position descriptions. (J.Ex.1 at 4-6). The APWU asked the arbitrator to (1) find that the dispute was within the scope of RI-399 and was properly before the arbitrator, (2) find that the work was exclusively for the APWU unit, and (3) remand the dispute to the parties for a determination of the proper remedy under the Article 15 process of the collective bargaining agreement.

5

### B.  The Anderson Award

Arbitrator Anderson issued his award on August 23, 2006.  He held that the dispute was properly before him and, on the merits, that "[s]uch scanning is the primary work of clerk General Expediter(s)."  (J.Ex.1 at 9).  With respect to the threshold jurisdictional issue, the award does not contain any analysis of the scope of RI-399.  Instead, he apparently construed the joint referral letter as a concession by the parties that the dispute was jurisdictional.

> While acknowledging that the Employer's reliance on the language ["new or consolidated facility, new work, or an operational change"] relative to the criteria for submitting jurisdictional issues into arbitration, [the arbitrator] could not ignore the fact that the RDRC [Regional Dispute Resolution Committee] committee agreed to go that route.

(J.Ex.1 at (award) at 3) (emphasis added).  Later, after again acknowledging the RI-399 MOU language restricting such jurisdictional disputes to cases involving "new or consolidated facility, new work, or an operational change" and agreeing that, thereafter, "no new disputes will be initiated . . . challenging jurisdictional work assignments in any operation as they currently exist," he stated:

> [A]rbitrability was generally favored by the Undersigned principally *because the parties mutually agreed* to adjudicate the jurisdictional dispute utilizing the RI-399 jurisdictional arbitration process.  *The arbitrator did not find it appropriate to overrule this mutual agreement. While the language clearly points in the direction of limiting the filing of grievances for existing work*, the parties nonetheless agreed to seek clarification of this dispute in the RI-399 arbitration process.  To void this mutual agreement would be tantamount to a third party neutral assuming a role bordering on god-like judgement.

(*Id.* at 9) (emphasis added).  Nowhere in the award did the arbitrator even acknowledge the expressed limitation in the scheduling letter that "*[t]his letter does not constitute a waiver of arbitrability . . .*"(*Id.* at  22, 26).  Nowhere in the award does the arbitrator actually discuss the

scope of RI-399 other than his acknowledgment above that "the language clearly points in the direction of limiting the filing of grievances for existing work."

With respect to the underlying merits – which craft should properly be assigned the scanning work at issue – Arbitrator Anderson briefly reviewed the competing position descriptions and ultimately concluded that "[s]uch scanning is the primary work of clerk General Expediter(s)." (*Id.* at 9). He briefly acknowledged a point raised by both the Postal Service and the NPMHU, that the position description for the General Expediter position made no mention of "scanning" as a "work duty," noting that he consequently "did not fully credit the APWU's assertions on this point." He went on to conclude, however, that the evidence was nonetheless persuasive enough to link scanning with the responsibilities of the General Expediters to ensure 'proper and expeditious handling' . . ." and other generally described duties. (*Id.* at 8)

### Procedural History

The NPMHU filed this civil action on November 20, 2006, seeking to vacate the arbitration award. In its complaint, the NPMHU asserts that Arbitrator Anderson erroneously found that the parties "had agreed to submit the jurisdictional dispute to him for a decision on the merits." (Compl. ¶ 9). The complaint further asserts that Arbitrator Anderson exceeded his authority under RI-399 because he was only empowered to decide the threshold issue of arbitrability, and not to determine the merits. (Compl. ¶ 9). The APWU answered, denying that Arbitrator Anderson had exceeded his authority and asking the court to affirm the award. The APWU also asserted a permissive counterclaim[3] seeking to compel the NPMHU and the Postal

---

[3] Although the APWU's " Counterclaim to Compel Arbitration" is properly a permissive counterclaim as to the NPMHU, it should be designated as a cross claim as to the Postal Service. See Fed. R. Civ. P. 13(g).

Service to arbitrate an unrelated jurisdictional dispute over the proper craft to perform a keying function on a linear parcel sorter at the Bulk Mail Center in Seattle Washington.  The parties have resolved the counter-claim and by separate filing are submitting a Stipulated Order of Dismissal as to that claim only.

In its answer, the Postal Service reasserted the position it took in the arbitration – the dispute did not involve "new work" or otherwise fall within RI-399, so the dispute was not arbitrable before Mr.  Anderson, and that issue had not been "waived" because it was expressly preserved in the letter to the arbitrator signed by all three parties.  The Postal Service thus joined the NPMHU in asking that the Anderson Award  be vacated.

## ARGUMENT

### Standard for Vacatur of Arbitration Awards

The Postal Service fully recognizes that, under the seminal Supreme Court decisions known as the Steelworkers Trilogy,[4] the standard for vacating Arbitrator Anderson's award is one that is highly deferential to the labor arbitration process.  However, the Supreme Court has made clear that an arbitrator's discretion to fashion an award has limits.  A labor arbitrator is "confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597. The arbitrator's award is valid only so long as it "draws its essence from" the parties' contract.  *Id.*  And "[w]hen the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.*  An award does

---

[4]  *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

not draw its essence from the contract where "the arbitrator . . . rendered a judgment based on external legal sources, wholly without regard to the terms of the parties' contract." *APWU v. Postal Service*, 789 F.2d 1, 8 (D.C. Cir. 1986). The Supreme Court has also cautioned that in reviewing labor arbitration awards, a court has "'no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'" *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 37 (1987) (quoting *Steelworkers v. American Mfg. Co.*, 363 U.S. at 568).

This standard was eloquently summarized by the Seventh Circuit in *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501 (7th Cir. 1991):

> To be entitled to set aside the arbitrator's action, the court must find a violation of the agreement to arbitrate. Which means that the role of the court is severely limited – but not negligible. Since the arbitrator's function ordinarily and in this case, is limited to interpreting the contract, the court asked either to set aside or enforce his award must make sure that he abided by the limits on his authority, for otherwise the award was made in violation of the agreement to arbitrate. This is the meaning of the slogan from *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960), that the award must "draw its essence" from the contract that the arbitrator was asked to interpret.

*Id.*, 935 F.2d at 1505 (*additional citations omitted*). As explained below, the award in this case "was made in violation of the agreement to arbitrate." Indeed, the award patently ignores the parties' agreement both (1) in *failing to actually decide* whether the dispute was properly a jurisdictional dispute under RI-399 but instead finding that the parties had waived that issue despite an unequivocal agreement to the contrary, and (2) in ruling on the merits when he was not authorized to do so.

9

**The Award Should Be Vacated Because the Arbitrator Failed to Actually
Decide the Threshold Issue of Arbitrability but Instead Found that the Parties
Had Waived that Issue Despite Unequivocal Evidence to the Contrary**

The Postal Service is primarily interested in ensuring that the process agreed upon by the

three parties for resolution of jurisdictional disputes is properly followed in this and future

matters.  In this case, it was not.

As previously noted, the letter sent to Arbitrator Anderson scheduling the arbitration

hearing expressly stated that it "does not constitute a waiver by either party of any issues of

arbitrability or timeliness . . ." (J.Ex.1 at 26).  That letter, signed by representatives of the

NPMHU, the APWU, and the Postal Service, constitutes the agreement of the parties.  All parties

submitted evidence on the issues of arbitrability and presented extensive arguments thereon in

their closing briefs.  The NPMHU and the Postal Service argued that the dispute was not

arbitrable because none of the requisite criteria – a new or consolidated facility, new work, or an

organizational change – were present, while the APWU argued that the parties had waived any

challenge to arbitrability simply by referring the dispute to the RI-399 process.[5]  For Arbitrator

Anderson to have performed his function properly, it was necessary for him to actually assess the

scope of RI-399, and determine whether the dispute before him fell within its scope.  That he

wholly failed to do so is evident from the award.

Though recognizing the Postal Service's argument "relative to the criteria for submitting

jurisdictional issues into arbitration" he stated "he could not ignore the fact that the RDRC

committee agreed to go that route" (J.Ex. 1 at 3).  Five pages later, Mr. Anderson acknowledged

---

[5]    Mention of the "no waiver" language in the scheduling letter was conspicuously absent from
the APWU's closing argument, but was quoted and argued in the Postal Service's closing brief.
(J.Ex. 1 at 22)

that "clearly points in the direction of limiting the filing of grievances for existing work,"

thereby suggesting that, if he had properly understood his function as examining the scope of the

RI-399 agreement and determining whether or not the dispute before him properly fell within its

ambit, *he likely would have found that it did not.*  But he pointedly failed to engage in this

analysis, erroneously finding that the issue was not before him because "the parties nonetheless

agreed"  to submit this dispute to the RI-399 arbitration process.  "To void this mutual agreement

would be tantamount to a third party neutral assuming a role bordering on god-like

judgement."(*Id.* at 8).  Plainly, he ignored the key statement in the parties' letter retaining him to

hear this dispute.

It is thus abundantly clear that Arbitrator Anderson erroneously viewed the "mutual

agreement" of the parties to submit the dispute to arbitration to somehow constitute a waiver of

the issue of whether or not the dispute was properly arbitrable.  And he did this despite the

undisputed fact that the parties *expressly and unambiguously reserved the right* to argue

arbitrability and timeliness in the scheduling letter.  As previously noted, the Postal Service

quoted the language that "[t]his letter does not constitute a waiver . . ." in its closing brief.  The

award makes no mention of this language.

We recognize that the deferential standard by which a court must view an arbitration

award is such that an award is to be upheld "so long as the record discloses a permissible route to

the stated conclusion." *Sargent v.  Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532.

(D.C. Cir.  1989).  *See also APWU v.  NPMHU and USPS,* 2007 WL 581921 (D.D.C. No. 1:05-

CV-01290, February 21, 2007).  But here there is no "permissible route" to the arbitrator's

conclusion that the parties had waived their right to challenge arbitrability by the very act of

11

referring the case to arbitration with an expressed reservation of that right. This is not a case where the award provides no explanation, or even an ambiguous one as in *Chicago Typographical Union, supra,* 935 F.2d at 1506 (upholding award where the basis for the arbitrator's decision is ambiguous). While it is appropriate to infer a valid rationale where the award either provides none or states an ambiguous one, it is not appropriate to do so where, as here, the arbitrator did explain his rationale and that rationale is in clear derogation of the parties' agreement.

The award in this case completely ignores the parties' agreement to seek a determination of whether or not the underlying dispute presents a jurisdictional question and instead found a waiver of that right notwithstanding the parties' unambiguous agreement to the contrary. The award is clearly "in violation of the parties' agreement to arbitrate" and thus fails to "draw its essence" from the parties' agreement.

This reason alone mandates that the award be vacated.

**II.    The award should be vacated because the arbitrator exceeded his authority**

As previously discussed, the Postal Service and both Unions signed a "question and answer document" interpreting the MOU which states, in relevant part: "If the [Dispute Resolution] Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, *that question is appealable* through the Dispute Resolution Procedures up to and including arbitration for resolution *prior to the parties addressing the merits of the dispute.* (J.Ex. 1 at 213) (emphasis added). This language was quoted to Arbitrator Anderson in the APWU's closing brief.

In this case, the Dispute Resolution Committee was "in disagreement as to whether or not the grievance involve[d] a jurisdictional claim" arbitrable under RI-399 and "that question" was appealed to arbitration.  The arbitrator's proper function at that point was simply to resolve "that question," *i.e.*, whether the dispute involves a jurisdictional claim.  And this was to occur *"prior to the parties addressing the merits*." *Id.*

As demonstrated above, Arbitrator Anderson failed to actually determine "that question" but instead erroneously found a waiver in spite of the parties' agreement to the contrary.  He then compounded that error by going on to determine the merits of the dispute and award the work in question to the APWU collective bargaining unit, something he was not empowered to do.  Thus, in this aspect too, the award is clearly "in violation of the parties' agreement to arbitrate" and fails to "draw its essence" from the parties' agreement.  An award that violates the parties' agreement by so clearly exceeding the authority the parties gave the arbitrator cannot stand.  For this reason as well, the award must be vacated.

## CONCLUSION

For the reasons stated above, this court should enter summary judgment vacating the award and remanding the matter back to the parties.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, Bar # 354530
Assistant United States Attorney
555 Fourth Street, NW, Tenth Floor
Washington, DC 20530
202-514-7137

Of Counsel:
DENNIS E. SZYBALA
United States Postal Service
Law Department

14

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

| | |
|---|---|
| NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO, | ) ) ) ) ) |
| | ) |
| Plaintiff & Counter-Claim Defendant, | ) ) |
| v. | ) |
| | ) |
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) |
| | ) |
| Defendant & Counter-Claimant, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| Defendant & Cross-Claim Defendant. | ) ) |

Civil Action No. 1:06CV1986 (JR)

———————————————————————

**UNITED STATES POSTAL SERVICE'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

The facts material to this motion are not in genuine dispute and are fully set forth in the record of the arbitration proceedings.[6]

1.      Plaintiff National Postal Mail Handlers Union ("NPMHU") and Defendant American Postal Workers Union ("APWU") are labor organizations recognized by the Postal Service as the collective bargaining representatives for all mail handlers and clerical employees, respectively.  See R. 1.

———————————————————————

[6]    The parties have agreed to jointly submit the record of the arbitration Joint Exhibit ("J.Ex.1"). The parties have also stipulated to the authenticity of the documents comprising Joint Exhibit 1.   It is being filed by the National Postal Mail Handlers by separate filing.

2.      On April 16, 1992, the two unions and the Postal Service entered into a tripartite

agreement entitled "Memorandum of Understanding pertaining to RI-399 Dispute Resolution

Procedures" (the "MOU").  (J.Ex.1 at 196-203).   The MOU states, inter alia

> Effective with the signing of this agreement, no new disputes will be initiated at
> the local level by either union challenging jurisdictional[7] work assignments in any
> operations as they currently exist.  Except as otherwise provided in the New or
> Consolidated Facilities, New Work, or Operational Change sections contained in
> this memorandum, all local craft jurisdictional assignments which are not already
> the subject of a pending locally initiated grievance will be deemed as a proper
> assignment for that facility.

(J.Ex.1 at 196).

3.      Following adoption of the MOU, new jurisdictional disputes were to be resolved

by tripartite Dispute Resolution Committees, or by arbitration if not resolved by the committees.

The Postal Service and both unions subsequently agreed to a "question and answer document"

interpreting the MOU which provides, in relevant part:

> (3)  If a grievance exists or is filed alleging a violation of the contract other than
> RI-399 (e.g. Article 7.2) and one of the parties believes the issue in the grievance
> constitutes a jurisdictional dispute, what if anything should be done with the
> grievance?
>
> Answer:   It must be referred to the Dispute Resolution Committee for an initial
> determination as to whether or not it involves a jurisdictional claim.  If it is determined it
> involves a jurisdictional dispute, the grievance will be processed in the Dispute
> Resolution Procedures.  If the Committee is in disagreement as to whether or not the
> grievance involves a jurisdictional claim, *that question is appealable* through the Dispute
> Resolution Procedures up to and including arbitration for resolution *prior to the parties
> addressing the merits of the dispute.*

(J.Ex.1 at 213) (emphasis added).

---

[7]     A jurisdictional dispute is one in which the grievant union seeks to either change what it
acknowledges to be an established craft assignment in the other union's favor, or to determine an
undecided craft assignment.

2

### A.   The Anderson arbitration

4.     The dispute underlying this case concerns the proper collective bargaining unit (or craft) to perform a certain scanning function on  international mail at the International Mail Facility ("IMF") in Oakland, California.   In a letter dated April 30, 2001, the USPS sought to "clarify existing assignments" to "avoid potential crossing craft issues in the future,"(J.Ex.1 at 32) and proposed an amendment the facility "inventory"[8] stating  "Scanning is the principle responsibility of the General Expediter [an APWU position]" with Mail Handlers allowed to scan only "[i]n the event of an unforeseen situation/emergency."  *Id.*

5.      Disputing that position, the APWU grieved, claiming a violation of Articles 7 and 15 of the collective bargaining agreement and RI-399 on the grounds the Postal Service did not assign the scanning work exclusively to APWU employees.  The grievance was processed under Article 7 of the APWU's collective bargaining agreement.  However, because the APWU contended the scanning assignment constituted a jurisdictional dispute, the Postal Service and the APWU agreed to refer the dispute to the tripartite Local Dispute Resolution Committee for resolution under the RI-399 procedures.  (J.Ex.1 at 50-51).

6.     The letter reflecting that agreement also stated, in relevant part, "If the Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, *that question is appealable* through the Dispute Resolution Procedures up to and including arbitration *for resolution prior to the parties addressing the merits of the dispute*."  (J.Ex.1 at 50) (emphasis added).

---

[8]  The facility's "inventory" is a compilation of information reflecting which craft – APWU clerks or NPMHU mail handlers – are assigned specific work duties, such as the scanning work at issue here.

3

7.      The dispute was thereafter referred to Arbitrator Donald J. Anderson, one of the arbitrators agreed upon by all three parties for the RI-399 Jurisdictional Dispute Arbitration Panel.  The letter scheduling the arbitration for hearing – signed by all three parties – stated, in relevant part: "*[t]his letter does not constitute a waiver by either party of any issues of arbitrability or timeliness as it relates to the processing of the grievances*, as it merely serves to confirm to the arbitrator the location, date and time . . ." (J.Ex.1 at 26) (emphasis added)

8.      A hearing before Arbitrator Anderson took place on June 27, 2006.  The arbitrator heard opening statements, heard testimony, and received documentary evidence from all three parties.  The parties subsequently submitted written closing arguments.  (J.Ex.1 at 3)

9.      The Postal Service argued that the dispute was not properly arbitrable as a "jurisdictional" dispute under RI-399 because it dealt only with the assignment of "already existing work at the International Mail Facility" and did not fall within the scope of the RI-399 MOU which applied only (1) in cases of new or consolidated facilities, (2) new work, or (3) operational changes.  (J.Ex.1 at 21).

10.      Responding to the APWU's assertion in opening argument "that the grievance was jurisdictional as evidenced by the three signatures of the three members of the Regional Dispute Resolution Committee on the scheduling letter," the Postal Service pointedly relied on scheduling letter which expressly stated: "This letter does not constitute a waiver of arbitrability or timeliness . . . " (J.Ex.1 at 22, 26).   The NPMHU also argued the assignment was not a jurisdictional dispute within the meaning of RI-399 because it did not concern a "New or Consolidated Facility, New Work, or Operational Change."  (J.Ex.1 at 356-57)

11.    The APWU argued the assignment was arbitrable under RI-399 because the Local

and Regional Dispute Resolution Committees had agreed to submit the dispute to RI-399, thus

ignoring the language of the scheduling letter that the letter "does not constitute a waiver of

arbitrability . . ." (J.Ex.1 at 15).  The APWU acknowledged that no "new work" or other factor

was involved (J.Ex.1 at 14-15), but urged the scanning work properly belonged to the clerk craft

based on a comparison of the clerk and mail handlers position descriptions. (J.Ex.1 at 4-6).  The

APWU asked the arbitrator to (1) find that the dispute was within the scope of RI-399 and was

properly before the arbitrator, (2) find that the work was exclusively for the APWU unit, and (3)

remand the dispute to the parties for a determination of the proper remedy under the Article 15

process of the collective bargaining agreement.

### B.  The Anderson Award

12.    Arbitrator Anderson issued his award on August 23, 2006.  Construing the joint

scheduling letter as an agreement by the parties that the grievance before him was a

jurisdictional dispute arbitrable before him – notwithstanding that the letter states "[t]his letter

does not constitute a waiver of arbitrability . . ." (J.Ex.1 at 15) – Arbitrator Anderson found that

the grievance was arbitrable, stating:

> While acknowledging that the Employer's reliance on the language ["new or
> consolidated facility, new work, or an operational change"] relative to the criteria
> for submitting jurisdictional issues into arbitration, [the arbitrator] could not
> ignore the fact that the RDRC [Regional Dispute Resolution Committee]
> committee agreed to go that route.

 (J.Ex.1 at (award) at 3) (emphasis added).

13.    Later, after again acknowledging the RI-399 MOU language restricting

jurisdictional disputes to cases involving "new or consolidated facility, new work, or an

5

operational change," Arbitrator Anderson stated:

> [A]rbitrability was generally favored by the Undersigned principally *because the parties mutually agreed* to adjudicate the jurisdictional dispute utilizing the RI-399 jurisdictional arbitration process. *The arbitrator did not find it appropriate to overrule this mutual agreement. While the language clearly points in the direction of limiting the filing of grievances for existing work*, the parties nonetheless agreed to seek clarification of this dispute in the RI-399 arbitration process. To void this mutual agreement would be tantamount to a third party neutral assuming a role bordering on god-like judgement.

(*Id.* at 9) (emphasis added).

<div style="margin-left:40%;">

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney


_____/s/_____
CLAIRE WHITAKER, Bar # 354530
Assistant United States Attorney
555 Fourth Street, NW, Tenth Floor
Washington, DC 20530
202-514-7137

</div>

Of Counsel:

DENNIS E. SZYBALA
United States Postal Service
Law Department

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO,<br><br>    Plaintiff & Counter-Claim Defendant,<br><br>    v.<br><br>AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>    Defendant & Counter-Claimant,<br><br>    and<br><br>UNITED STATES POSTAL SERVICE,<br><br>    Defendant & Cross-Claim Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:06CV1986 (JR) |

_____

## ORDER

Upon consideration of defendant and cross-claimant U.S. Postal Service's Motion for Summary Judgment the responses filed by the other parties, and the Postal Service's reply, it is this _____ day of _____, 2007,

ORDERED, that summary judgment be entered in the U.S. Postal Service's favor, for the reasons set forth in its dispositive motion and reply.

_____
UNITED STATES DISTRICT JUDGE