IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL POSTAL MAIL HANDLERS UNION, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:06CV01986 (JR) ) |
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) ) |
| and | ) ) |
| UNITED STATES POSTAL SERVICE, | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF NATIONAL POSTAL MAIL HANDLERS UNION'S MEMORANDUM IN OPPOSITION TO DEFENDANT AMERICAN POSTAL WORKERS UNION'S, AFL-CIO, MOTION FOR SUMMARY JUDGMENT**

On November 7, 2007, Defendant American Postal Workers Union, AFL-CIO ("APWU") filed a Motion for Summary Judgment and an accompanying Memorandum in Support of that Motion. *See* Memorandum of American Postal Workers Union, AFL-CIO, in Support of its Motion for Summary Judgment ("APWU Brief") (d/e 24). Plaintiff National Postal Mail Handlers Union ("NPMHU") hereby submits this Memorandum in Opposition to the APWU's Motion.

**ARGUMENT**

I.  BECAUSE ARBITRATOR ANDERSON'S AWARD REACHED THE MERITS OF A CONTRACT DISPUTE THAT THE PARTIES TO THE ARBITRATION PROCEEDING MOST ASSUREDLY DID *NOT* "MUTUALLY AGREE" TO SUBMIT TO HIM FOR A DECISION ON THE MERITS, THAT ARBITRATION AWARD IS DUE TO BE VACATED

This is, at bottom, a straightforward case. As the NPMHU showed in its Motion for Summary Judgment, Arbitrator Anderson undertook to decide the merits of a jurisdictional dispute over the proper assignment of certain "scanning" work in a Postal Service facility in Oakland, California, based on his determination that the parties to the arbitration proceeding—the NPMHU, the APWU and the Postal Service—had entered into a "mutual agreement" to submit that jurisdictional dispute to him for a decision on the merits. *See* Plaintiff National Postal Mail Handlers Union's Memorandum in Support of its Motion for Summary Judgment ("NPMHU Opening Brief") (d/e 25), at 7-8. But an examination of the record before Arbitrator Anderson utterly belies the existence of such a "mutual agreement." *See id.* at 5-7, 11-13. There simply was no such "mutual agreement"; and that being so, Arbitrator Anderson's award reaching the merits of the jurisdictional dispute over the proper assignment of the "scanning" work cannot stand under the line of cases relied upon by the NPMHU at pages 11-12 of its Opening Brief. Those cases rest on the fundamental principle—stated by the Supreme Court nearly half-a-century ago in one of the landmark "*Steelworker* trilogy" cases—that "arbitration is a matter of contract and a party can not be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). Under this principle, where, as here, an arbitrator reaches out to decide the merits of a dispute that the parties to the arbitration proceeding "ha[ve] *not*

2

agreed . . . to submit" to him for a decision on the merits, *id.* (emphasis added), the arbitrator's award is *ultra vires* and should be vacated by the court on that ground.

      A.    (1)    In arguing against this straightforward conclusion, the APWU trots out and discusses at great length a body of case law emphasizing the extraordinary deference given by the courts to labor arbitration awards resolving disputes over the proper interpretation and application of collective bargaining agreements. *See* APWU Brief at 8-13. But with all due respect to the APWU, its reliance on this body of case law is badly misplaced. For by their own terms, the cases relied upon by the APWU make it abundantly clear that such extraordinary deference to labor arbitration awards is justified *only* where the parties to the arbitration proceeding *have in fact* "mutually agreed" to submit the dispute in question to the arbitrator for decision.

The Supreme Court's decision in *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29 (1987)—and the lengthy block quote from that decision that appears at pages 9-10 of the APWU's brief—is sufficient standing alone to prove up this point. In the quoted portion of *Misco*, the Court states in the plainest terms imaginable why it is "that the courts play only a limited role when asked to review the decision of an arbitrator." *Id.* at 36. It is "[b]ecause" where "the parties *have contracted to have disputes settled by an arbitrator chosen by them* rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract *that they have agreed to accept.*" *Id.* at 37-38 (emphasis added).

In other words, under *Misco*, it is *the parties' contractual agreement* to submit a particular dispute between them to an arbitrator for resolution that serves as the necessary predicate for—and sole justification for—judicial deference to the result that emerges

3

from the *agreed-upon* arbitral process. *Accord, e.g.*, *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597-99 (1960) ("*When* an arbitrator is commissioned to [resolve a dispute over the proper] interpret[ation] and appl[ication] [of a] collective bargaining agreement," and *when* "[i]t is *not* apparent that [the arbitrator] went beyond the submission" of the case to him, "[i]t is the arbitrator's construction [of the contract] *which was bargained for*; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his") (emphasis added); *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509-10 (2001) (same; citing, *inter alia*, *Misco* and *Enterprise Wheel*).

It follows ineluctably from the foregoing Supreme Court cases relied on by the APWU that judicial deference to a labor arbitration award resolving a dispute over the proper interpretation and application of a collective bargaining agreement is *not* justified where the parties to the arbitration proceeding *have not in fact* "mutually agreed" to submit that particular dispute to the arbitrator for decision. And indeed, that is precisely how these Supreme Court cases uniformly have been interpreted in an unbroken line of lower court cases that the APWU fails even to acknowledge—much less attempt to deal with—in its Brief. As the Fifth Circuit has explained, "[j]udicial deference to arbitration . . . does not grant carte blanche approval to any decision an arbitrator might make. . . . *The arbitrator's authority is circumscribed by the arbitration agreement*, *and he can bind the parties only on issues that they have agreed to submit to him*." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 583 (5th Cir. 1980) (emphasis added) (internal

4

citation omitted); *see also* NPMHU Opening Brief at 10-11 (citing other lower court cases to the same effect).[1]

Equally to the point, "[w]hether an arbitrator has exceeded the[ ] bounds ['circumscribed by the arbitration agreement'] is an issue *for judicial resolution*." *Piggly Wiggly*, 611 F.2d at 583 (emphasis added). Indeed, acceptance of the proposition that the courts are obliged to "defer" to a labor arbitrator's own assessment of the bounds of the parties' arbitration agreement would be utterly inconsistent with the fundamental principle that "arbitration is a matter of contract and a party can not be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior and Gulf,* 363 U.S. at 582. Careful judicial scrutiny of such arbitral assessments is both necessary and entirely appropriate, for as the Fourth Circuit cogently has observed, "[t]o retain its viability as a most useful tool in dispute resolution, . . . [arbitration] must be sufficiently guided by basic rules of decision-making *to assure parties that the arbitrator will resolve only the disputes that they submit*." *Bowater Carolina Co. v. Rock Hill Local Union No. 1924,* 871 F.2d 23, 26 (4th Cir. 1989) (emphasis added).

(2)    Given these well-established legal principles, we can state unequivocally that the NPMHU would not have brought this lawsuit to vacate Arbitrator Anderson's award had the NPMHU genuinely been party to a "mutual agreement" to submit the jurisdictional dispute over the proper assignment of the scanning work at the

---

[1] The Court of Appeals for this Circuit, it bears noting, has made this same basic point in the commercial arbitration context. *See Williams v. E.F. Hutton & Co.,* 753 F.2d 117, 119 (D.C. Cir. 1985) ("Nor would the decision of the arbitrators be entitled to any deference if they were found to have exceeded their authority by reaching out to decide matters not consigned to their discretion by the arbitration agreement. There is no duty to arbitrate matters not subject to the arbitration agreement, . . ., and no authority on the part of arbitrators to consider matters not necessary to the resolution of disputes actually submitted, . . . .") (internal citations omitted).

Postal Service facility in Oakland, California to Arbitrator Anderson for a decision on the merits—notwithstanding the NPMHU's view that Arbitrator Anderson's conclusion that the scanning work at the Oakland facility is properly performed exclusively by APWU-represented postal employees is not only mistaken, but badly mistaken. The NPMHU brought this lawsuit to vacate Arbitrator Anderson's award precisely and only because Arbitrator Anderson's determination that the NPMHU was party to such a "mutual agreement" defies all reality. As we showed in our opening brief, the NPMHU and the Postal Service could not have made it any clearer in their respective presentations to Arbitrator Anderson—and in the arbitration scheduling letter that they both signed together with the APWU—that *neither* the NPMHU *nor* the Postal Service desired or "agreed to" a resolution of the jurisdictional dispute tendered by the APWU on its merits. *See* NPMHU Opening Brief at 5-7, 11-13.[2] Indeed, given the NPMHU and Postal Service presentations, and the plain language of the scheduling letter, Arbitrator Anderson's posit of such a "mutual agreement" is unfathomable and inexplicable.[3]

---

[2] While we will not burden the Court with a regurgitation of that entire showing here, the following pointed and unequivocal statement in the Postal Service's brief to the Arbitrator does bear repetition and emphasis: "[T]he case *must be immediately dismissed* as non-arbitrable. *No* consideration, *whatsoever*, should be given to testimony at the hearing that addressed the merits of the case. The opportunity for the APWU to challenge and attempt to make its case to establish sole jurisdiction of the scanning duties *has long come and gone*." *See* NPMHU Opening Brief at 12-13 (emphasis added).

[3] To be sure, in its Brief, the APWU rushes to the defense of Arbitrator Anderson's determination that there was in fact such a "mutual agreement," *see* APWU Brief at 15-18, but that APWU defense does not bear a moment's scrutiny. According to the APWU, Arbitrator Anderson reasonably could have inferred the existence of such a "mutual agreement" from "the agreement of the parties at the RDRC [Regional Dispute Resolution Committee] to have the case be decided on the merits." *Id.* at 18. But the only communication that Arbitrator Anderson received from the RDRC was the arbitration scheduling letter, and that letter *expressly preserved* the NPMHU's and Postal Service's *procedural objections* to the Arbitrator's resolution of the jurisdictional dispute

That being so, Arbitrator Anderson's award resolving the merits of the jurisdictional dispute tendered by the APWU is due to be vacated under the lines of cases relied upon by the NPMHU at pages 10-11 of its Opening Brief (and not addressed at all by the APWU in its Brief).

      B.     In an effort to buttress its argument to the contrary, the APWU relies heavily on the "recent decision of this Court" in *American Postal Workers Union v. National Postal Mail Handlers Union,* No. 05-CV-1290, 2007 WL 581921 (D.D.C. Feb. 21, 2007) (hereinafter "*APWU v. NPMHU*")—a decision in which the NPMHU purportedly "'made the law' on the application of the general principles of arbitration as they apply to the parties under the MOU . . . [and did so] under circumstances closely analogous to those present in this case." *See* APWU Brief at 13. But again with all due respect to the APWU, its reliance on the recent decision in *APWU v. NPMHU* is badly misplaced. The *APWU v. NPMHU* case brought by the APWU was not "closely analogous to" the present case brought by the NPMHU in the slightest. Unlike the

---

tendered by the APWU on its merits. *See* NPMHU Opening Brief at 5-6, 13. This scheduling letter, on its face, belies the existence of a "mutual agreement" among the parties to submit the case to Arbitrator Anderson for a decision on the merits.

     In its Brief, the APWU also seeks to make something of the fact that both the NPMHU and the Postal Service made arguments and submitted evidence on the merits of the jurisdictional dispute tendered by the APWU in their respective presentations to Arbitrator Anderson. *See* APWU Brief at 16-17. But this effort takes grasping at straws to a new level. As we have emphasized, the NPMHU and the Postal Service could not have made it any clearer in their respective presentations to Arbitrator Anderson that the Arbitrator should *not* reach the merits of the jurisdictional dispute tendered by the APWU, but should instead dismiss the case on procedural grounds. Against this background, it is plain that the NPMHU's and Postal Service's arguments on the merits were nothing more than alternative arguments offered as a hedge against the Arbitrator's rejection of their principal contention that the case should be dismissed on procedural grounds—and *not* arguments that can in any way, shape or form be construed as "acquiescence in" or "agreement to" a resolution of the case on its merits.

7

present case, the *APWU v. NPMHU* case was a frontal attack on the merits of an arbitrator's resolution of a dispute that *no* party to that case contended was outside the scope of the parties' agreed-upon submission to the arbitrator.  And, in successfully repelling that attack, the NPMHU "made" no new "law," as the APWU would have it, but rather succeeded only in persuading the Court to apply the hornbook law that we already have shown in **Part A.** above has no application in the quite different circumstances presented here.

The dispute presented to Arbitrator Schmertz in the *APWU v. NPMHU* case was over the proper characterization of grievances (i) that the NPMHU had filed under Article 15 of its collective bargaining agreement with the Postal Service challenging the Service's assignment of certain work to APWU-represented employees, and (ii) that the Postal Service had "removed" to the tripartite "RI-399" arbitration process.  In the proceedings before Arbitrator Schmertz, the NPMHU argued that its grievances were in substance "cross-craft" grievances, in which case Arbitrator Schmertz had both the authority and the duty under the MOU to "remand" the case for resolution under Article 15 of the collective bargaining agreement between the NPMHU and the Postal Service. The APWU and the Postal Service, on the other hand, argued that the grievances were in substance "jurisdictional" grievances, in which case a "remand" to the Article 15 process was improper under the terms of the MOU.  Arbitrator Schmertz sided with the NPMHU and remanded the grievances to the Article 15 process—albeit "without making a specific finding that [the NPMHU's] grievances constituted cross-craft grievances" as the NPMHU had argued to him.  *See APWU v. NPMHU*, 2007 WL 581921, at *7.

In rejecting the APWU's frontal attack on the merits of Arbitrator Schmertz's resolution of the dispute over the proper characterization of the NPMHU's grievances, Magistrate Judge Kay applied the hornbook law recited by the APWU at pages 11-12 of its Brief—in particular, the hornbook law principle that "[c]ourts must approach [labor] arbitration awards with the same deferential standard" established by the Supreme Court in cases like *Misco* and *Garvey*, even where the arbitrator has failed to explain his decision adequately (or at all).  *See APWU v. NPMHU*, 2007 WL 581921, at \*7 (citing *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529 (D.C. Cir. 1989), in which the Court of Appeals for this Circuit stated and applied this hornbook law principle).  That ruling by Magistrate Judge Kay was entirely justified (and unremarkable) under the circumstances, because, as previously noted, *no* party to the case had contended that the dispute over the proper characterization of the NPMHU's grievances was outside the scope of the parties' agreed-upon submission to Arbitrator Schmertz.

In the present case, of course, the NPMHU's *sole* basis for attacking Arbitrator Anderson's award is the Arbitrator's wholly inexplicable action in straying beyond the scope of the parties' agreed-upon submission and undertaking to resolve the merits of a jurisdictional dispute that the parties to the arbitration proceeding most assuredly did *not* "mutually agree" to submit to Arbitrator Anderson for decision.  *Supra* pp. 2-7.  Given the sea differences in the two cases, the APWU's effort to turn its loss in *APWU v. NPMHU* to its advantage here is unavailing.

9

II. ARBITRATOR ANDERSON'S AWARD CANNOT BE UPHELD ON THE GROUND THAT IT RESTS ON AN ADEQUATELY-SUPPORTED, ALTERNATIVE "HOLDING THAT THERE WAS A CONTINUING VIOLATION."

In tacit recognition of the reality that Arbitrator Anderson's award cannot be upheld on the ground on which it truly rests—*viz.*, on the ground that the parties to the arbitration proceeding "mutual agreed" to submit the jurisdictional dispute over the proper assignment of the scanning work at the Oakland, California facility for a decision on the merits—the APWU makes a passing argument that Arbitrator Anderson's award rests on an adequately-supported alternative ground that warrants judicial affirmance of the award. Specifically, at the tail end of its Brief, the APWU argues, without elaboration, that Arbitrator Anderson's award rests on an adequately-supported, alternative "holding that there was a continuing violation." *See* APWU Brief at 18-19. This last-ditch effort to salvage Arbitrator Anderson's award is doubly-flawed.

First and foremost, Arbitrator Anderson's award, taken as a whole, cannot possibly be read to rest on an alternative "holding that there was a continuing violation." To be sure, after first stating (at page 3 of his award) that he was undertaking to decide the merits of the jurisdictional dispute tendered by the APWU based on the asserted "fact" that the parties to the proceeding had "request[ed]" and "mutually decided to seek" such a merits decision from him, *see* Joint Ex. 1 at 3, Arbitrator Anderson went on to state (at page 4 of his award) that he also was "persuaded to deny the EMPLOYER/NPMHU'S motion [for dismissal on timeliness grounds] because of the continuing nature of the alleged violation," *see id.* at 4. But in so stating, Arbitrator Anderson made no attempt whatsoever to ground that "continuing violation" theory in

10

the collective bargaining agreement (*i.e.*, the MOU) governing the disposition of the jurisdictional dispute tendered by the APWU; rather, he cited only to an abstract discussion of the "continuing violation" doctrine in an outdated labor arbitration treatise.[4] And, when he returned to the subject at page 9 of his award, Arbitrator Anderson belated recognized that that "continuing violation" theory *had no validity whatsoever under the MOU*—at which point he effectively abandoned that theory while reaffirming his prior determination that he was duty bound to resolve the jurisdictional dispute on its merits based on the purported "mutual agreement" among the parties to submit that dispute to him for a merits decision:

> Finally, the Undersigned closely reviewed the EMPLOYER'S claim relative to the RI-399 MOU language discussing "General Principles" . . . and "Scope of Settlement" . . . wherein the parties generally agreed that:
>
>> ". . . no new disputes will be initiated at the local level by either union challenging jurisdictional work assignments in any operation as they currently exist. . . ."
>
> Here again, the Arbitrator found language and practice to be somewhat disjointed. As previously discussed in this report, arbitrability was generally favored by the Undersigned principally because the parties mutually agreed to adjudicate the jurisdictional dispute utilizing the RI-399 jurisdictional arbitration process. The Arbitrator did not find it appropriate to overrule this mutual agreement. While the language [of the MOU] *clearly* points in the direction of limiting the filing of grievances for existing work, the parties *nonetheless agreed* to seek clarification of this dispute in the RI-399 arbitration process. *To void this mutual agreement would be tantamount to a third party neutral assuming a role bordering on god-like judgement* [sic].

*Id.* (citations omitted) (emphasis added).

---

[4] Specifically, Arbitrator Anderson cited the third edition of the Elkouri & Elkouri treatise, which is now in its sixth edition.

11

In other words, Arbitrator Anderson belatedly recognized at page 9 of his award what is abundantly clear from the MOU's plain language: where, *as here*, NPMHU-represented employees were performing certain work when the MOU was entered into by the parties in April 1992, and the performance of that work by NPMHU-represented employees was *not* the subject of a then-pending APWU grievance, the Postal Service could continue thereafter to assign that work to NPMHU-represented employees *without thereby violating*—much less *"continu*[*ously*] violat[ing]"—the MOU.  *See* NPMHU Opening Brief at 2-3 (explaining that the effect of the MOU was to "freeze" work assignments as they existed in April 1992, and to thereby foreclose future grievances alleging that those work assignments violated the MOU).  But Arbitrator Anderson went ahead and decided the jurisdictional dispute tendered by the APWU "nonetheless," concluding that "[t]o void [the parties'] mutual agreement [to submit that dispute to him for a merits decision] would be tantamount to a third party neutral assuming a role bordering on god-like judgement."  Read as a whole, then, Arbitrator Anderson's award plainly rests on his twice-stated determination that such a "mutual agreement" existed—and *not* on any alternative "holding that there was a continuing violation."

Second, even assuming *arguendo*, and contrary to what we have just shown, that Arbitrator Anderson's award rests in some measure on an alternative "holding that there was a continuing violation," that award is due to be vacated in any event.  As explained above, Arbitrator Anderson rested that putative "holding" on an abstract discussion of the "continuing violation" doctrine in an outdated labor arbitration treatise, rather than on any interpretation or application of the MOU itself.  That putative "holding" thus falls within the small category of arbitral pronouncements that must be vacated on the ground

12

that the arbitrator has "dispense[d] his own brand of industrial justice," rather than issued an award that "draw[s] its essence from the collective bargaining agreement." *Enterprise Wheel,* 363 U.S. at 597; *see also American Postal Workers Union v. United States Postal Serv.,* 789 F.2d 1, 8 (D.C. Cir. 1986) (where "the arbitrator [has] rendered a judgment based on external legal sources, wholly without regard to the terms of the parties' contract, then the award [can] not be said to draw its essence from the contract").

## CONCLUSION

For the foregoing reasons, and those stated in the NPMHU's Opening Brief, the Court should enter summary judgment for the NPMHU, and issue an Order vacating the award in the matter captioned "Case # F98C-IF J - 01185458 (Loading Dock Scanning)."

Respectfully submitted,

   /s/ Bruce R. Lerner   
Bruce R. Lerner (D.C. Bar No. 384757)
Andrew Roth (D.C. Bar No. 414038)
Todd E. Edelman (D.C. Bar No. 447455)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, NW, Suite 1000
Washington, DC  20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
Email: blerner@bredhoff.com

*Attorneys for Plaintiff*
*National Postal Mail Handlers Union*

Dated:  December 10, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
NATIONAL POSTAL MAIL HANDLERS       )
UNION,                              )
                                    )
    Plaintiff,                     )
                                    )
    v.                             )   Case No. 1:06CV01986 (JR)
                                    )
AMERICAN POSTAL WORKERS UNION,      )
AFL-CIO,                            )
                                    )
    and                            )
                                    )
UNITED STATES POSTAL SERVICE,       )
                                    )
    Defendants.                    )
_____ )

**PROPOSED ORDER**

Upon consideration of the parties' cross motions for summary judgment the responses and replies, it is this _____ day of _____, 2007,

ORDERED that the motion of summary judgment filed by Defendant American Postal Workers Union be, and hereby is, denied, and it is

FURTHER ORDERED, that the motion for summary judgment filed by Plaintiff National Postal Mail Handlers Union is granted.  The arbitration award at issue in this case is vacated.

DONE, this the ___ day of _____, 2007.

_____
James Robertson
United States District Judge